**UNITED STATES of America**

**v.**

**Willie LUCAS, Appellant.**

**No. 24472.**

United States Court of Appeals, District of Columbia Circuit.

June 28, 1971.

---

14. 141 U.S.App.D.C. 390, 402, 439 F.2d 497, 509 (1970).

15. 144 U.S.App.D.C. 35, 444 F.2d 910 (1971).

Mr. John J. Dwyer, Washington, D. C. (appointed by this court) was on the brief for appellant.

Messrs. Thomas A. Flannery, U. S. Atty. and John A. Terry, William H. Collins, Jr., and Barry W. Levine, Asst. U. S. Attys., were on the brief for appellee.

Before WILBUR K. MILLER, Senior Circuit Judge, and McGOWAN and ROBB, Circuit Judges.

PER CURIAM:

Appellant was convicted by a jury of second degree murder. 22 D.C.Code § 2403. On this appeal he purports to formulate a number of questions, but they are in the main a reiteration of the central claim that the verdict was insufficiently supported by evidence of causation and malice.

Appellant was encountered at the front gate of the rooming house in which he lived by two police officers who were responding to a radio run reporting a shooting at that address. He immediately informed the officers that his wife had been shot and led them to his room. There they discovered the decedent lying on a bed and a pool of blood on the floor. The officers observed empty cartridge casings scattered in various parts of the room, as well as bullet holes in the window, door, closet, and a calendar hanging on the wall. Several liquor bottles and beer cans were also observed in the room, and appellant was reported by the officers as "probably high" although not drunk. An examination of the decedent revealed that a bullet had entered her body above the chest and had emerged from the small of her back. An expended .22 calibre slug was found embedded in the mattress. Upon being asked where the weapon was located, appellant, after some hesitation, indicated that it was behind the refrigerator in the room.[1] One of the officers retrieved a .22 calibre rifle from that location. A loaded pistol was also found underneath the bed. Appellant was placed under arrest by the officers, and a search of his person revealed six live rounds of ammunition in his pants pocket.

Initially to the investigating police officers and later as his defense at trial, appellant claimed that he and his wife had been target practicing with the rifle in their room, and that his wife, while sitting on the bed, had accidentally let

---

[1]. Appellant has not, either at trial or on this appeal, objected to the introduction of statements which he made to the police officers during their investigation.

the rifle slip from her hands so that the butt hit the floor, thereby discharging the weapon. At trial, expert evidence was introduced concerning the functioning of the rifle which tended to undercut appellant's theory of accidential firing. Telling testimony also was elicited from a physician who explained that, had the accident occurred according to appellant's depiction, the decedent's back wound would have been located above her stomach rather than below it. Moreover, the physician testified that the slug would have been found in the ceiling rather than in the mattress.

 The only claim raised by appellant which merits any detailed discussion is that the evidence on causation and malice did not support the jury's verdict. An evaluation of this claim requires this court to review the evidence "in the light most favorable to the Government making full allowance for the right of the jury to draw justifiable inferences of fact from the evidence adduced at trial and to assess the credibility of the witnesses before it." United States v. Hardin, 143 U.S.App.D.C. 320, at 322, 443 F.2d 735, at 737 (December 22, 1970).

 In the present matter evidence was introduced indicating that appellant was alone with the decedent when the fatal shot was fired; that he was somewhat inebriated at the time; that shells and bullet holes were found throughout the room; that the lethal bullet had traveled in a downward trajectory and came to rest in the mattress of the bed on which the decedent was seated (facts which contravened appellant's story that the gun was accidentally fired in an upward trajectory); and that it was unlikely that the rifle could misfire in the manner suggested by appellant. While only circumstantial in nature, we believe that these factors were sufficient to form a reasonable basis upon which the jury could have disbelieved appellant's defense and could have inferred that he shot his wife.

 Moreover, it it well established that evidence demonstrating that an act was "done so recklessly or wantonly as to manifest depravity of mind and disregard of human life" satisfies the malice requirement for second degree murder. See, e. g., Carter v. United States, 141 U.S.App.D.C. 259, 263, 437 F.2d 692, 696 n. 18 (1970); Mitchell v. United States, 140 U.S.App.D.C. 209, 215, 434 F.2d 483, 489 n. 9, cert. denied, 400 U.S. 867, 91 S.Ct. 109, 27 L.Ed.2d 106 (1970). We believe that the above mentioned factors also support a finding of such excessive recklessness.[2]

Affirmed.

2. A complementary claim raised by appellant, which we also find to be insubstantial, is that there was no evidence of a sufficient degree of recklessness introduced by the prosecution to merit an instruction to the jury regarding the inference of malice. We note, however, that appellant did not raise this objection below; indeed, the defense expressly stated to the trial judge that it was satisfied with the instructions given to the jury. In any event, as we have mentioned above, the evidence introduced suggests a high degree of recklessness on appellant's part, and the trial judge did not err in letting the case go to the jury on this theory.

Appellant also argues that the indictment was defective because it merely mentioned "malice aforethought" without specifying recklessness, leaving him without notice that the case would be tried on a theory of recklessness. Again, this was a matter which was not raised below; and, in any event, it should be noted that it has long been held in this jurisdiction that malice can be inferred from excessive recklessness. See, e. g., Lee v. United States, 72 App.D.C. 147, 112 F.2d 46 (1940). Given this long established precedent and the state of the evidence in the present case, we cannot say that appellant was unfairly foreclosed from any awareness that the Government would assert this theory of criminality.