CHARLOTTE JACOBSON, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3907–77.     Filed December 31, 1979.

*David G. Shaftel,* for the petitioner.
*Michael R. McMahon,* for the respondent.

HALL, *Judge:* Respondent determined a $623 deficiency in petitioner's income tax for 1974. Due to concessions made by petitioner, the issues remaining for decision are:

(1) Whether petitioner is entitled to deduct $5,900 as a theft loss;

(2) Whether petitioner and her husband are entitled to file a joint return under section 6013(b).[1]

### FINDINGS OF FACT

Some of the facts have been stipulated by the parties and are found accordingly.

Petitioner and her husband Charles lived at 36 Mile, Tok Road in the rural community of Gakona, Alaska, prior to 1974. In November 1973, petitioner left their home on account of marital difficulties and moved to Seattle. She left all of her possessions in their Alaska home.

In June 1974, petitioner returned to Alaska and commenced living in Paxson, where she worked as a waitress in the Paxson Lodge. Paxson is about 90 miles from Gakona. Petitioner continued to leave her possessions in the Gakona home.

In September 1974, Charles, without petitioner's knowledge or consent, asked his girlfriend to go to the Gakona house and clean it and give all petitioner's clothes to a church rummage sale. A neighbor called petitioner to warn her that Charles' girlfriend and her parents were in the house and were removing things from it. Petitioner contacted the local police who sent an Alaskan State trooper to the house. The trooper arrived while the girlfriend was still there. The girlfriend told the trooper that she was married to Charles and that she and her parents were cleaning the house and taking things to the dump. The trooper does not recall whether he saw them take anything out of the house or whether he asked them if they were taking anything. He did not remember any significant amount of personal belongings or furniture in the house. The trooper did not file a police report because he believed the matter was civil in nature.

---

[1] All statutory references are to the Internal Revenue Code of 1954, as in effect during the year in issue.

Later that day, the neighbor's daughter saw the girlfriend loading things from the Gakona house into her pickup truck.

A week later, petitioner went to the Gakona residence and discovered that almost all of her possessions were missing. Petitioner did not contact the police again or make a report of missing items. Petitioner contacted several attorneys in an effort to regain her missing possessions. They all concluded that she had insufficient evidence to support any legal action.

On October 11, 1974, petitioner and her son went to the Gakona house and found the lock to the back door pried open and fresh footprints in the snow leading from the house to the highway. They called a policeman who filed a police report which stated that, while there were a number of valuable items in the house, apparently nothing was missing. The police file was closed without further action being taken. Petitioner later noticed she was missing moose horns and caribou horns. However, she did not report this fact to the police.

Petitioner lost considerable personal property in 1974, including antique tools and toaster, cooking equipment and cookbooks, bedding, yarn, a wolf rug, a wolverine rug, a potbelly stove, a necklace, binoculars, a CB radio, an oceanic radio, figurines, the moose horns, and the caribou horns. The value of these objects was approximately $4,000, and petitioner's basis in these articles was the same.

Petitioner filed a separate return for 1974.[2] In 1977, she and Charles decided to file an amended joint return for 1974. Petitioner had an amended return prepared by an accountant and on February 10, 1977, she flew to Fairbanks, Alaska, with the return. On February 11, 1977, petitioner and Charles met in Fairbanks, signed the amended return, and then Charles took it and subsequently mailed it. The return was received at the Internal Revenue Service Center in Ogden, Utah, on February 16, 1977. The Revenue Service has lost the envelope in which the return was mailed. On February 11, 1977, respondent mailed petitioner a deficiency notice for her taxable year 1974.

## OPINION

The first issue is whether petitioner is entitled to a theft loss

---

[2]Petitioner and Charles were divorced in March 1975.

for 1974. Petitioner contends that missing property was stolen from the Gakona house on two separate occasions during 1974. Respondent asserts that petitioner has failed to establish that the thefts occurred and, alternatively, that she has failed to establish the amount of the loss she is entitled to if the thefts occurred.

Section 165(c)(3) allows the taxpayer a deduction for any loss sustained during the taxable year (and not compensated by insurance or otherwise) arising from theft. Petitioner must first prove that a theft occurred; a mere mysterious disappearance of the property in question is not enough. *Elliott v. Commissioner,* 40 T.C. 304 (1963); *Jones v. Commissioner,* 24 T.C. 525 (1955); *Allen v. Commissioner,* 16 T.C. 163 (1951).

Petitioner has established to our satisfaction that she owned the personal property that she claims was stolen, that the property was in the house when she left it, and that it was taken from the house without her permission during 1974. There is some evidence that most of petitioner's property was probably taken by her husband's girlfriend and her parents. Petitioner need not have sufficient evidence for a successful civil or criminal lawsuit against a particular alleged thief to be entitled to the loss deduction, nor, indeed, must petitioner prove who the thief or thieves were. If the reasonable inferences from the evidence point to theft rather than mysterious disappearance, petitioner is entitled to a theft loss. *Elliott v. Commissioner, supra; Jones v. Commissioner, supra.* A house full of personal property cannot easily "mysteriously disappear" like the brooch in *Allen v. Commissioner, supra,* which fell off or was taken off that taxpayer's dress. Someone had to move petitioner's property out of the house. It could have been moved out by her husband's girlfriend and family, or it could have been taken by an unknown thief who broke into the house. In either event, the property was appropriated and removed without the owner's knowledge or permission, and that is theft. The fact that the police failed to report the theft (in one case, because they thought the matter was a civil dispute when the girlfriend claimed to be petitioner's husband's wife, and, in the other case, because petitioner did not immediately realize that the moose and caribou horns were missing) is not sufficient evidence from which to conclude no theft occurred. There is no evidence petitioner carried any insurance on any of these items. We

conclude that petitioner has carried her burden of proving that the missing items (which she listed and described in great detail in her testimony) were stolen, and that she has not received any compensation for the property.

We also conclude that petitioner has substantiated that her loss was at least $4,000 and that her basis in the lost items was also at least $4,000. Some of the items she lost were inherited, some were gifts, and the rest were purchased. Many of the items either kept their value or appreciated. Considering the evidence as a whole, we are satisfied that petitioner is entitled to a theft loss deduction for 1974 of $4,000 (less the $100 limit).

The second issue is whether petitioner is entitled to file an amended joint return for 1974. Section 6013(b)(1) provides generally that a husband and wife who have filed separate returns may subsequently elect to file a joint return. Section 6013(b)(2)(C) states, however, that such election cannot be made "After there has been mailed to either spouse, with respect to such taxable year, a notice of deficiency under section 6212, if the spouse, as to such notice, files a petition with the Tax Court within the time prescribed in section 6213." In section 6013(b)(2)(D), a taxpayer who commences a refund suit has until the date he files his action to switch to a joint return. At first blush, it may appear strange that the statute would cut off a taxpayer's switching privilege at the 90-day letter stage if he goes the Tax Court route, but only at the litigation stage if he pays the tax and seeks a refund. However, the words of the statute clearly so provide. Had Congress intended to allow a Tax Court petitioner to switch until he files his petition, language to such effect would have been simpler to write than the provisions of section 6013(b)(2)(C). Congress may have been concerned with the potential procedural tangle which would have been created had a taxpayer in this Court been able to change his position so fundamentally after a notice of deficiency had issued. In the refund situation, a refund claim must be filed before commencing suit (sec. 7422(a)), and there can be no material variation between the claim and complaint. *Old Dominion Box Co. v. United States*, 447 F.2d 340, 346–347 (4th Cir. 1973), cert. denied 414 U.S. 910 (1973). Hence, the procedural situations are dissimilar. All this, of course, is mere speculation. We must take the statute as we find it. And, as written, the only question is whether petitioner and her husband filed the amended joint

return on or before the date the notice of deficiency was mailed to petitioner.

Respondent mailed to petitioner a deficiency notice for 1974 on February 11, 1977. Petitioner's amended joint return was received by the Internal Revenue Service Center in Odgen, Utah, on February 16, 1977. Respondent has lost the envelope in which petitioner and her husband mailed the joint return. Petitioner claims that the return was mailed on February 11, 1977, and that the date of mailing is the date of filing for this purpose under section 7502.

Respondent contends that section 7502(a)[3] is not applicable to "amended" returns. The plain language of the statute indicates otherwise. Section 7502(a) encompasses "*any* return" required to be filed by a prescribed date but which is delivered subsequent to that date. (Emphasis supplied.) Respondent has not offered any authority for his position, nor does the legislative history of section 7502 support such a narrow reading. H. Rept. 6958, 89th Cong., 2d Sess. (1966), 1966–2 C.B. 803, 809. We hold that "any return" means just that, and the absence of language explicitly mentioning amended returns does not foreclose petitioner's use of this section.

Section 7502(a) provides, in general, that a timely mailed return is deemed to be timely filed even though delivered to the Internal Revenue Service subsequent to the filing date. A timely mailed return is one which bears a United States postmark dated on or before the filing deadline. If the postmark on the return is illegible or missing, then the taxpayer may present extrinsic evidence to prove that the postmark, if legible or present, would have been timely. See *Sylvan v. Commissioner*, 65 T.C. 548, 553 (1975). Such extrinsic evidence includes the date of registration or certification, if the return is mailed in either of these two ways (sec. 301.7502–(1)(c)(2), Proced. & Admin. Regs.), and the actual time of mailing, since the reasonable inference is that

---

[3]SEC. 7502. TIMELY MAILING TREATED AS TIMELY FILING AND PAYING.

(a) GENERAL RULE.—

(1) DATE OF DELIVERY.—If any return, claim, statement, or other document required to be filed, or any payment required to be made, within a prescribed period or on or before a prescribed date under authority of any provision of the internal revenue laws is, after such period or such date, delivered by United States mail to the agency, officer, or office with which such return, claim, statement, or other document is required to be filed, or to which such payment is required to be made, the date of the United States postmark stamped on the cover in which such return, claim, statement, or other document, or payment, is mailed shall be deemed to be the date of delivery or the date of payment, as the case may be.

mail is postmarked on the day it is received by the postal authorities. *Sylvan v. Commissioner, supra* at 554. The burden of proving the presumed date of the postmark is on the sender. See *Vitale v. Commissioner,* 59 T.C. 246, 248 (1972); *Kralstein v. Commissioner,* 38 T.C. 810, 820 (1962); sec. 301.7502–(1)(c)(iii)(*a*), Proced. & Admin. Regs.

Respondent's failure to produce the envelope containing the return is treated as if the postmark were missing. Cf. *Thompson v. Commissioner,* 66 T.C. 737 (1976). Therefore, petitioner must prove that if the amended joint return had a postmark, it would have been dated prior to, or on, February 11, 1977.

The only evidence petitioner has introduced on the date of mailing of the return is her testimony that she met her husband in Fairbanks on February 11, 1977, at which time they signed the return, and her husband said he would mail it. Petitioner has failed to introduce any evidence as to when the husband in fact deposited the amended return in the mailbox. Her husband was not called to testify when he mailed the return. Compare *Ruegsegger v. Commissioner,* 68 T.C. 463, 467 (1977). Furthermore, no evidence was introduced to demonstrate the impossibility of having the amended return reach Ogden, Utah, on February 16 unless it was mailed from Fairbanks no later than February 11. Compare *Sylvan v. Commissioner, supra* at 554–555.

Since petitioner has failed to prove that the amended joint return was mailed on or before February 11, the election to file the amended joint return was not timely under section 6013(b)(2)(C).

To reflect the foregoing,

*Decision will be entered under Rule 155.*