Ricky McCLURKIN, Appellant,

v.

UNITED STATES, Appellee.

No. 80–1333.

District of Columbia Court of Appeals.

Argued Oct. 6, 1982.

Decided Jan. 31, 1984.

Christian J. Mixter, appointed by this court, with whom Linda E. Chatman, Washington, D.C., was on brief, for appellant.

Donald J. Allison, Asst. U.S. Atty., with whom Stanley S. Harris, U.S. Atty., at time brief was filed, John A. Terry, Asst. U.S. Atty., at time brief was filed, and G. William Currier, Asst. U.S. Atty., Washington, D.C., were on brief, for appellee.

Before NEWMAN, Chief Judge, KERN and BELSON, Associate Judges.

BELSON, Associate Judge:

 Appellant seeks review of two orders of the trial court denying collateral relief under D.C.Code § 23–110 (1973) from his guilty plea to one count of second-degree murder while armed in violation of D.C.Code §§ 22–2403, –3202 (1973).[1] Appellant's principal contentions are: 1) that his plea was made neither voluntarily nor intelligently because both the court and his counsel failed to inform him of the elements of second-degree murder contrary to the holdings of *Henderson v. Morgan,* 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976) or, alternatively, in violation of the requirements of Super.Ct.Crim.R. 11(c) governing guilty plea proceedings, and 2) that he was denied his Sixth Amendment right to effective assistance of counsel both prior to and at his plea and sentencing proceedings.[2] We affirm.

## I

The charges against appellant arose from the killing of Lewis Minor on the night of March 18, 1975. Appellant and codefendants Joseph Mention and Bruce Mention were arrested shortly after the incident. As part of a plea bargain with the government, appellant pleaded guilty on November 12, 1975, to one count of second-degree

---

1. Before us are: (1) an August 20, 1980 order denying without a hearing appellant's *pro se* motion to vacate his sentence under D.C.Code § 23–110, and (2) an April 29, 1982, order denying appellant's motion for rehearing on that *pro se* motion.

2. Appellant also appeals the rejection of two contentions made in his 1980 § 23–110 motion and properly rejected by the trial court. Appellant contends that he was not permitted to read the presentence report as he was entitled under Super.Ct.Crim.R. 32(b)(3)(A). However, Rule 32(b)(3)(A) requires that "*upon request . . .* defendant *or* his counsel" shall be permitted to read the presentence report. (emphasis supplied.) The sentencing transcript here clearly

indicates that appellant's counsel requested and was afforded the opportunity to review the presentence report. Appellant made no such request. We are thus satisfied that the court fully complied with its obligations to the appellant under Rule 32(b)(3)(A). Appellant also contends that the trial court misstated the maximum sentence for second-degree murder while armed as 15 years to life rather than 20 years to life. Appellant is incorrect. *See* D.C.Code § 22–2404, –3202 (1973). The 20-year sentence referred to in § 22–2404 is a minimum maximum, not a minimum. Moreover, the sentence appellant received was less than 15 years to life.

murder while armed, a lesser-included offense of first-degree murder while armed.[3]

On July 1, 1976, appellant filed a *pro se* motion to vacate his sentence under D.C. Code § 23–110. The trial court's denial of that motion was affirmed by this court and is not at issue on this appeal.[4]

On February 18, 1980, appellant filed a second *pro se* motion with the trial court to vacate sentence, purportedly under the authority of 28 U.S.C. § 2255 (1976), the federal counterpart of D.C.Code § 23–110. *See Swain v. Pressley,* 430 U.S. 372, 381–82, 97 S.Ct. 1224, 1229–30, 51 L.Ed.2d 411 (1977); *Lorimer v. United States,* 425 A.2d 1306, 1308 (D.C.1981) (per curiam). In that motion, the denial of which is now before us for review, appellant repeated the contention made in his 1976 motion that trial counsel had deceived him about the likelihood of a Youth Act sentence. Appellant also contended that his substitute counsel at sentencing did not provide effective assistance in that he failed to secure Youth Act treatment for him, failed to allow appellant to read the presentence Youth Act report, failed to inform appellant of the possible severity of the adult sentence and, generally, failed "to protect [his] constitutional rights." The court treated appellant's motion as made under D.C.Code § 23–110 and denied it without a hearing on August 20, 1980. Appellant noted his appeal.

In December 1980, we appointed counsel to assist appellant with his appeal. Appointed counsel withdrew in July 1981 and present counsel were substituted. Counsel then filed a motion in Superior Court for rehearing of that court's denial of the 1980 § 23–110 motion, raising new issues which form the principal bases of this appeal. We granted a stay of appellant's appeal while his motion for rehearing was pending. On April 29, 1982, the trial court denied rehearing in a Memorandum Opinion and Order.

## II

Before reaching the merits of appellant's contentions, we must first address two jurisdictional issues raised by the government. First, the government contends that we have no jurisdiction over appellant's appeal from the August 1980 denial of his § 23–110 motion because appellant's *pro se* appeal was filed in an untimely manner.

■ We reject this contention. The Clerk of the Superior Court failed to send the parties the required notice of the entry of that ruling made outside their presence. D.C.App.R. 4 II(b)(4). Thus appellant's time for noting appeal began to run as of the time he had actual notice of entry of the order. *Samuels v. United States,* 435 A.2d 392 (D.C.1981) (per curiam). Since the record does not identify that date, we will assume jurisdiction. *See id.* at 395.

■ The government also contends that we lack jurisdiction over the trial court's April 1982 order denying appellant's motion for rehearing because appellant never filed a notice of appeal from this order as required under D.C.App.R. 4 II(a)(1). We

---

3. Appellant had originally been indicted for first-degree felony murder under D.C.Code § 22–2401 (1973); first-degree premeditated murder while armed under D.C.Code § 22–2401, –3202 (1973); first degree premeditated murder under D.C.Code § 22–2401 (1973); first-degree burglary while armed under D.C. Code § 22–1801(a), –3202; first-degree burglary under D.C.Code § 22–1801(a) (1973); armed robbery under D.C.Code § 22–2901, –3202 (1973); robbery under D.C.Code § 22–2901 (1973), and carrying a pistol without a license under D.C.Code § 22–3204 (1973).

4. In that *pro se* motion, appellant had alleged, *inter alia,* that his sentence was excessive in comparison to those of his codefendants and in light of his age, education and prior adult criminal record; that the trial court was biased against him; and that his counsel provided appellant ineffective assistance by purportedly inducing appellant to plead guilty with deceptive assurances that appellant would receive Federal Youth Corrections Act ("Youth Act") treatment and sentence, *see* 18 U.S.C. § 5010 (1976), rather than the adult sentence which appellant ultimately received.

find that argument unpersuasive because of the special circumstances of this case. When we granted appellant's request for a stay of his appeal from the earlier order of August 20, 1981, pending the outcome of appellant's petition for a rehearing thereon, we requested that appellant's counsel notify us upon the trial court's disposition of the matter. Counsel did so by letter filed with this court on the 13th day after issuance of the trial court's Memorandum Opinion. We regard that letter as a timely notice of appeal. D.C.App.R. 4 II(b)(1), (4).[5] While we hold we have jurisdiction of this appeal, we caution that a separate notice of appeal is required as to every order appealed from. See In re E.G.C., 373 A.2d 903, 905 (D.C. 1977).

### III

We also note preliminarily that the two orders before us for review were entered in connection with efforts by appellant to withdraw his guilty plea. We therefore discuss briefly the standard to be applied by the trial court in ruling upon such matters.

 Although we have held that "as a practical matter virtually every possible avenue of appeal is waived by a guilty plea," Bettis v. United States, 325 A.2d 190, 194 (D.C.1974), a defendant who is sentenced after pleading guilty may later attack the voluntary and intelligent character of the plea. See Tollett v. Henderson, 411 U.S. 258, 266–67, 93 S.Ct. 1602, 1607–08, 36 L.Ed.2d 235 (1973); Lorimer v. United States, supra, 425 A.2d at 1308. The most appropriate procedure for post-sentence relief from a guilty plea is a motion to withdraw a plea to "correct manifest injustice" under Super.Ct.Crim.R. 32(e); alternatively,

a motion to vacate sentence may be made under D.C.Code § 23–110. See Lorimer, supra, 425 A.2d at 1308–09. A Rule 32(e) motion to withdraw a guilty plea is committed to the sound discretion of the trial judge whose decision will be disturbed on appeal only upon a showing of abuse of discretion. Lorimer, supra, 425 A.2d at 1308; Byrd v. United States, 377 A.2d 400, 405 (D.C.1977).

We have recently endorsed the testing of motions attacking the voluntariness of guilty pleas under § 23–110 by the "manifest injustice" standard of Rule 32(e). See Lorimer, supra, 425 A.2d at 1308; see also United States v. Watson, 179 U.S.App.D.C. 103, 108, 548 F.2d 1058, 1063 (1977) (requests for collateral relief from guilty pleas brought under 28 U.S.C. § 2255 should be treated under the manifest injustice standard of Fed.R.Crim.P. 32(d), which is the same as Super.Ct.R. 32(e)). Our task on review, therefore, will be to determine whether the trial judge abused his discretion in applying that standard.

### IV

Although the trial court was to apply the manifest injustice standard of Rule 32(e), its disposition of these collateral attacks remained subject to the hearing requirement of D.C.Code § 23–110(c). Thus we must also determine whether the trial court erred in disposing of appellant's motions without conducting a hearing.

 Section 23–110(c) provides that a court may deny relief summarily only where "the motions and files and records of the case conclusively show that the prisoner is entitled to no relief." See Bettis, supra, 325 A.2d at 196–98. An evidentiary hear-

---

5. D.C.App.R. 4 II(b)(1), (4), provides in pertinent part:

When a judgment or final order is entered or decided out of the presence of the parties and counsel, and without previous notice to them of the court's decision, such judgment or order shall not be considered as having been entered, for the purpose of computing the time for filing a notice of appeal or application for allowance of appeal, until the third day after notice thereof has been mailed to the parties or counsel by the Clerk of the Superior Court.

ing on a § 23–110 motion alleging ineffectiveness of counsel is not warranted if the allegations are vague and conclusory, are wholly incredible, or do not merit relief even if true. *Smith v. United States,* 454 A.2d 822, 824 (D.C.1983); *Gibson v. United States,* 388 A.2d 1214, 1215–17 (D.C.1978).

Based upon our review of the record and the analysis of appellant's contentions which we set forth in the remaining parts of this opinion, we are satisfied that the trial court did not err in declining to hold evidentiary hearings on appellant's motion. We agree with the trial court that appellant's contentions were either refuted by the record, or vague and conclusory. We turn now to appellant's arguments.

## V

The first of appellant's principal contentions is that his plea was neither intelligent nor voluntary because the trial court failed to provide him with adequate notice of the elements of second-degree murder as required under *Henderson, supra,* or, alternatively, under Super.Ct.Crim.R. 11. We are satisfied that this contention is without merit.

At the plea proceeding, the government made the following evidentiary proffer of the events from which the charges against appellant arose.[6] On the night of March 18, 1975, appellant and codefendant Bruce Mention, both escapees from the Oak Hill facility at the Children's Center, decided to go to Lewis Minor's apartment. Appellant and Bruce Mention each wanted to "f____

[him] up" because they believed Minor had informed the police of their whereabouts. Appellant and Bruce Mention had even told three or four people that they intended to kill Minor for doing so. They also wanted to rob Minor because he purportedly had received a lot of money from an income tax refund.

Bruce Mention's brother, codefendant Joseph Mention, secured a pistol. Appellant and Bruce Mention gained entry to Minor's apartment, while Joseph Mention remained outside. Minor was eventually shot in the back of the head by either appellant or Bruce Mention.[7] From outside the apartment, Joseph Mention saw his brother simply sitting in a chair at the time the shot was fired, and surmised that appellant had shot Minor. After the shooting, in the presence of appellant's sister and three other witnesses, appellant and Bruce Mention each claimed to be the individual responsible for the killing.

When asked by the trial judge whether this government proffer was fair and accurate, appellant replied that it was. The court then asked appellant his version of the events, "so as the court will understand that [you] clearly understand what you are pleading to ... you knew what you were doing." Appellant stated that upon his and Bruce Mention's entry into Minor's apartment, Minor "pulled [a] gun out." In response to a question from the court, appellant admitted drawing the gun which Joseph Mention had secured, and "stick[ing] it back in my pocket because [Minor] ain't seen it." Appellant then stated that when

---

**6.** At the beginning of the plea proceeding appellant acknowledged that he wished to plead guilty to second-degree murder while armed as a lessor-included offense of one of the counts in his indictment. He also acknowledged that he understood that by his guilty plea he was waiving his constitutional rights to trial and to appeal. He stated that he had not been threatened or otherwise coerced into entering a guilty plea and that no promises had been made to him in return for his plea, other than the government's promise to dismiss the remaining

counts of his indictment at the time of sentencing.

**7.** The government's proffer at the plea proceeding included the fact that Minor had been shot in the back of the head. Appellant agreed to this fact. Appellant's counsel now challenges the fact, pointing out that the affidavit supporting the warrant for appellant's arrest stated Minor had been shot in the right side of the head. We do not regard that affidavit as necessarily contradicting the factual proffer to which appellant agreed.

he and Bruce Mention began speaking with Minor, "trying to calm him down," Minor "laid the gun back down." However, Minor eventually "picked [his gun] back up." Appellant then shot him.[8] Appellant gave no indication that his shooting had in any way been provoked by Minor's actions in the apartment or that he had shot Minor in self-defense or in the heat of passion. Appellant did deny that he or Bruce Mention had intended to rob Minor prior to killing him.

After appellant's remarks the following colloquy ensued between appellant and the court:

> THE COURT: Now, sir, is it clearly understood that you are pleading to second degree murder while armed?
>
> [APPELLANT]: Yes, Your Honor.
>
> THE COURT: Now, sir, has anyone forced you or coerced you into making this plea?
>
> [APPELLANT]: No, sir.
>
> THE COURT: Are you making this plea of your own free will and being made voluntarily by you?
>
> [APPELLANT]: Yes, Your Honor.
>
> THE COURT: Are you making this plea because you are guilty and because of no other reason?
>
> [APPELLANT]: Yes, Your Honor.
>
> THE COURT: And, sir, have you discussed this plea fully with your attorney, Mr. King David?
>
> [APPELLANT]: Yes, sir.

> THE COURT: And, sir, have you been satisfied with the services and advice Mr. King David has rendered you in this case?
>
> [APPELLANT]: Yes, Your Honor.
>
> THE COURT: Now, did anyone tell you, sir, that because of your age and you are eligible you may be sentenced under the Federal Youth Correction Act?
>
> [APPELLANT]: Yes, sir.
>
> THE COURT: Now, is it your testimony, then, sir, that you are making this plea fully knowing what you are doing?
>
> [APPELLANT]: Yes, sir.
>
> THE COURT: And on you own free will?
>
> [APPELLANT]: Yes, sir.

After further discussion with appellant and both counsel, the court accepted appellant's plea.

■ Appellant argues that his guilty plea was involuntary as a matter of Fifth Amendment due process because neither the court nor his counsel informed him of the elements of second-degree murder while armed, particularly the element of "malice aforethought."[9] In support of this contention, appellant relies upon the Supreme Court's decision in *Henderson v. Morgan, supra,* 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108.

In *Henderson,* defendant Morgan, who had formerly been classified as retarded and committed to a state school for mental defectives, was released to become a laborer on the victim's farm. *Id.* at 641–42, 96

---

8. Appellant initially said that Bruce Mention had shot Minor, but under the immediate, thorough questioning of the court admitted without qualification that he had in fact shot Minor.

9. Under D.C.Code § 22–2403, murder in the second degree is defined in the following way:

Whoever with malice aforethought ... kills another, is guilty of murder in the second degree.

The two essential elements of second-degree murder under D.C.Code § 22–2403 which the government must prove beyond a reasonable doubt are:

1) that the defendant inflicted an injury or injuries upon the deceased from which the deceased died, and
2) that the defendant, at the time he so injured the deceased, acted with malice.

*See* Criminal Jury Instructions for the District of Columbia, No. 4.23 (3d ed. 1978). Although not relevant here, there may also be a third element to be proven by the government when there is evidence that the killing occurred in the heat of passion caused by adequate provocation and the defendant raises this as an affirmative defense. *Id.* In that situation, the government must establish that the killing was not in the heat of passion.

S.Ct. at 2256. After an argument during which the victim threatened to return defendant to state custody, defendant decided to flee. During the night, the defendant entered the victim's room with a knife, assertedly to collect his back wages. *Id.* The victim awoke and began screaming. The defendant stabbed her to death. *Id.*

Defendant was charged with first-degree murder. Defendant's counsel unsuccessfully sought to have the charge reduced to first-degree manslaughter.[10] As part of a plea bargain, defendant pleaded guilty to second-degree murder.[11] *Id.* at 642, 96 S.Ct. at 2256.

At the plea hearing, defendant told the judge that his plea was based on the advice of his attorneys and that he understood that he was accused of killing the victim. There was no mention by either the court or counsel that a "design to effect the death of the person killed" was an element of second-degree murder. *Id.* at 642–43, 96 S.Ct. at 2256.

At sentencing, defendant's counsel maintained that the defendant "meant no harm to the victim" when he entered the victim's room with a knife. *Id.* at 643 n. 11, 96 S.Ct. at 2257, n. 11. He proffered that defendant had killed the victim only as a result of his "uncontrollable and ungovernable temper" and of panic arising from the "excitement and tension" of the victim's screaming. *Id.* The trial judge then pronounced sentence.

Upon an evidentiary hearing on defendant's motion for collateral relief, the federal district judge found as fact that the defendant had not been advised of the requisite mental element of second-degree murder by either the court or defense counsel. On the basis of this factual finding, the court concluded that defendant's plea of guilty was

involuntary and set it aside. *Id.* at 640, 96 S.Ct. at 2255.

In upholding the district judge's decision, the Supreme Court held that a guilty plea is involuntary for want of Fifth Amendment due process when a defendant does not receive "real notice of the true nature of the charges against him." *Id.* at 645, 96 S.Ct. at 2257 (quoting *Smith v. O'Grady,* 312 U.S. 329, 334, 61 S.Ct. 572, 574, 85 L.Ed. 859 (1941)). The Court refused to assume that notice of the true nature or substance of a charge to a defendant always requires a trial court's description of every element of the offense, but observed that notice of the intent element of second-degree murder was required. *Henderson, supra,* 426 U.S. at 647 n. 18, 96 S.Ct. at 2258 n. 18. The Court noted pointedly that it did not disagree with the government's argument that the voluntariness of a guilty plea depends upon an analysis of the "totality of the circumstances" to determine "whether the substance of the charge, as opposed to its technical elements, was conveyed to the accused." *Id.* at 644, 96 S.Ct. at 2257.

The Supreme Court recognized that defendant Morgan's case was "unique" in that the trial judge made a specific factual finding that the element of intent was not explained to the defendant. *Id.* at 647, 96 S.Ct. at 2258. As a result of this particular finding, the Court explained that it was unable to indulge the ordinarily appropriate presumption that "defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit." *Id.*

The Supreme Court also focused attention on whether there was anything in the record to serve as a substitute for an informed voluntary admission by defendant that he had the requisite intent, such as a

---

10. The New York Penal Code defined first-degree manslaughter as a "killing ... in the heat of passion, but in a cruel and unusual manner or by means of a dangerous weapon." N.Y.Penal Law § 1050 (McKinney 1967).

11. The New York Penal Code defined second-degree murder as a killing "committed with a design to effect the death of the person killed ... but without deliberation and premeditation." N.Y.Penal Law § 1046 (McKinney 1967).

factual statement or admission by the defendant necessarily implying that he had such intent to commit the killing. *Id.* at 646, 96 S.Ct. at 2258. The Court concluded in the circumstances that an admission by defendant that he had committed the killing was not necessarily an admission that he was guilty of second-degree murder and that, in light of defendant's mental deficiencies and other evidence, a jury would have been entitled to accept defense counsel's appraisal of the incident as involving only first-degree manslaughter. *Id.* at 645–46, 96 S.Ct. at 2257–58.

Although we agree with appellant that the plea record here does not contain a formal recitation by either the court or counsel of the elements of second-degree murder, we believe the instant case is distinguishable from *Henderson.* We conclude that appellant's guilty plea was intelligent and voluntary for two reasons: first, because the plea proceeding as a whole was conducted in such a manner as to inform appellant adequately of the nature of the charge to which he was pleading, and, second, because appellant made admissions that necessarily implied that he had committed second-degree murder.

*Henderson* did not hold that an explanation of all of the elements of a charge is the exclusive method by which a defendant may receive real notice of the nature of the charges against him. Various state and federal courts have so construed. *Henderson. See Wabasha v. Solem,* 694 F.2d 155, 158 (8th Cir.1982); *Sober v. Crist,* 644 F.2d 807, 809–10 (9th Cir.1981) (per curiam); *State v. Priet,* 289 Md. 267, 283–90, 424 A.2d 349, 357–60 (1981) (and cases cited therein); *State v. Williams,* 404 A.2d 814, 819–20 (R.I.1979); *Commonwealth v. McGuirk,* 376 Mass. 338, 343–44, 380 N.E.2d 662, 666 (1978), *cert. denied,* 439 U.S. 1120, 99 S.Ct. 1030, 59 L.Ed.2d 80 (1979); *In re Ronald E.,* 19 Cal.3d 315, 324–25 & nn. 6–7, 562 P.2d 684, 690 & nn. 6–7, 137 Cal.Rptr. 781, 787 nn. 6–7 (1977) (en banc); *State v. Ohta,* 114 Ariz. 489, 490–91, 562 P.2d 369, 370–71 (1977) (en banc).

■ A reviewing court's determination of whether a guilty plea is voluntary as a matter of due process under *Henderson* requires its examination of the entire plea record and its analysis of the totality of circumstances surrounding the plea. *See Henderson, supra,* 426 U.S. at 644, 96 S.Ct. at 2257; *Brady v. United States,* 397 U.S. 742, 749, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970); *State v. Priet, supra,* 289 Md. at 287–90, 424 A.2d at 359–60. The critical inquiry is whether a defendant has been apprised adequately of the substance of an offense, rather than of its formal legal components. *See Henderson, supra,* 426 U.S. at 644, 96 S.Ct. at 2257; *State v. Priet, supra,* 289 Md. at 287–90, 424 A.2d at 359–60. Surrounding circumstances relevant to a reviewing court's inquiry concerning voluntariness include the complexity of the charges, the personal characteristics of the defendant, the defendant's familiarity with the criminal justice system, and the factual basis proffered to support the court's acceptance of the plea. *See Wabasha v. Solem, supra,* 694 F.2d at 158; *Berry v. Mintzes,* 529 F.Supp. 1067, 1077–79 (E.D. Mich.1981); *State v. Priet, supra,* 289 Md. at 288, 424 A.2d at 360; *Commonwealth v. McGuirk, supra,* 376 Mass. at 344–48, 380 N.E.2d at 666–68.

■ Furthermore, where a plea record, like that here, does not contain any explanation of the elements of an offense by the trial court, reviewing courts have upheld guilty pleas where the record as a whole reveals that a defendant has received real notice of the substance of the charges against him through other appropriate means. Such appropriate means include the following: (1) a representation that counsel has explained to the defendant the elements of the charge which he admits by his plea; (2) stipulations by defense counsel to facts constituting the charge or unex-

plained element, or (3) a factual proffer by the government that defendant had engaged in a course of conduct which constituted the offense charged or the unexplained element of that offense. *See State v. Priet, supra,* 289 Md. at 283–90, 424 A.2d at 357–60; *State v. Williams, supra,* 404 A.2d at 820; *Commonwealth v. McGuirk, supra,* 376 Mass. at 343–44, 380 N.E.2d at 666; *In re Ronald E., supra,* 19 Cal.3d at 324–25, 562 P.2d at 690, 137 Cal.Rptr. at 787. *Cf. Henderson, supra,* 426 U.S. at 644–47, 96 S.Ct. at 2257–58. Ultimately, compliance with the standards of *Henderson* requires that a reviewing court, considering the record as a whole, is satisfied that the trial judge could fairly determine that the defendant understood the nature of the charge to which he pleaded guilty. *State v. Priet, supra,* 289 Md. at 291, 424 A.2d at 361; *State v. Williams, supra,* 404 A.2d at 819.

██ We are satisfied that the trial judge who accepted appellant's plea had an adequate basis for determining that appellant understood the nature of the charge. We so conclude principally because of the detailed factual proffer by the government, and appellant's response to it. The proffer described a killing by appellant in a manner that clearly showed malice.

The plea record also reveals other circumstances which bolster the conclusion that appellant understood the nature of the charge. We observe that at the time of his plea, appellant was 17 years old, had completed the tenth grade and suffered from no apparent mental or physical infirmity. Appellant was no stranger to the criminal justice system. He had been arrested 19 times between the ages of 11 and 17, and was wanted for armed robbery in Maryland when arrested for the present offenses.

Moreover, appellant's plea to second-degree murder while armed was part of a plea bargain agreement which reduced a ten-count indictment to one lesser-included offense. By achieving dismissal of the other charges, appellant effectively eliminated potential lengthy consecutive sentences.

In light of the totality of circumstances surrounding appellant's plea, including the government's comprehensive factual proffer, appellant's admission of the accuracy of that proffer, appellant's admission of the accuracy of that proffer and his statement concerning his commission of the offense, appellant's prior experience with the criminal justice system, and finally the thorough colloquy between the court and appellant, we are satisfied that the trial judge in the guilty plea proceeding took adequate steps to insure that appellant understood the nature of the offense to which he pleaded guilty, and conclude on that basis that appellant's plea was made intelligently and voluntarily.

The second basis upon which we conclude that appellant's plea was voluntary under the Supreme Court's holding in *Henderson* is that appellant admitted factually to the commission of second-degree murder. The essential elements of second-degree murder are that a defendant inflicted an injury upon the deceased from which the deceased died and that the defendant acted with malice aforethought. *See* note 9, *supra.*

██ Malice may be express or implied. *See Mitchell v. United States,* 140 U.S.App.D.C. 209, 215, 434 F.2d 483, 489, *cert. denied,* 400 U.S. 867, 91 S.Ct. 109, 27 L.Ed.2d 106 (1970); Criminal Jury Instructions for the District of Columbia, No. 4.23, *supra.* Express malice exists where one unlawfully kills another in pursuance of a wrongful act or unlawful purpose, without legal excuse. *See Curry v. United States,* 322 A.2d 268, 270–71 (Nebeker, J., concurring); *Mitchell v. United States, supra,* 140 U.S.App.D.C. at 215, 434 F.2d at 489; Criminal Jury Instructions for the District of Columbia, No. 4.23, *supra.* Implied malice may be inferred from the circumstances of the killing, such as a killing caused by a

defendant's intentional use of fatal force absent mitigating or justifying circumstances or when an act which imports danger to another is done so recklessly or wantonly as to manifest disregard for human life. *See United States v. Lucas,* 144 U.S. App.D.C. 368, 370, 447 F.2d 338, 340 (1971); *Mitchell v. United States, supra,* 140 U.S. App.D.C. at 215, 434 F.2d at 489; Criminal Jury Instructions for the District of Columbia, No. 4.23, *supra.* Malice may be inferred from the use of dangerous weapon like a gun. *Curry v. United States, supra,* 322 A.2d at 269; Criminal Jury Instructions for the District of Columbia, No. 4.23, *supra.*

When appellant unequivocally accepted the government's factual proffer of the crime and later recited his own version of the events, he admitted to a course of conduct which amounted to second-degree murder. Appellant expressed to others his intention to kill Minor before the shooting, shot Minor with a gun which he had brought with him and had concealed, and told others after the shooting that he had killed Minor. The plea record discloses that appellant (1) "inflicted the injury upon Minor from which he died," and (2) did so under circumstances that evinced malice aforethought. Other courts have held that malice aforethought may be inferred under similar circumstances. *See, e.g., Commonwealth v. McGuirk, supra,* 376 Mass. at 344, 380 N.E.2d at 666 (defendant's admission to protracted beating of victim constituted an admission of the unexplained element of malice aforethought necessary to constitute murder in the second degree); *People v. Davis,* 76 Mich.App. 187, 189–90, 256 N.W.2d 576, 577 (1977) (defendant's admission that he stabbed victim with a knife sufficient to uphold plea of guilty to sec-

ond-degree murder since malice could be inferred from admission). Moreover, in the absence of any indication that there was evidence that appellant acted in the heat of passion caused by adequate provocation, there was no likelihood that a jury could have found appellant guilty of manslaughter instead of second-degree murder.[12] Similarly, although it was stated that the victim had a gun, appellant gave no indication of a factual basis for a defense or self-defense.

Thus, there is in the record before us that which the Supreme Court stated would serve as a substitute in the event an explanation to a defendant of the nature of the offense was omitted, *i.e.,* an admission by defendant to the trial judge necessarily implying guit of the offense to which he pleaded guilty. *Henderson, supra,* 426 U.S. at 646, 96 S.Ct. at 2258. For this reason, also, we reject appellant's argument that his plea was involuntary as a matter of due process.

Appellant next contends that the trial court violated Super.Ct.Crim.R. 11 when it accepted appellant's guilty plea without first informing him about the elements of second-degree murder while armed. In essence, appellant maintains that a court's recitation of the formal elements of an offense to a defendant who is pleading guilty is required under Super.Ct.Crim.R. 11, just as it was assertedly required as a matter of constitutional due process under *Henderson.* For the same reasons we rejected appellant's due process argument we reject his Rule 11 contention.

At the time of his guilty plea in November 1975, the applicable version of Rule 11 provided in relevant part that:

> [T]he court may refuse to accept a plea of guilty, and shall not accept such plea or a

---

12. If in the plea discussion, appellant had in any way suggested that there was "some evidence" that his killing of Minor had occurred "in the heat of passion caused by adequate provocation," he would have raised the issue whether he was guilty only of the lesser-included offense of manslaughter. *See Morgan v.*

*United States,* 363 A.2d 999, 1002 (D.C.1976), *cert. denied,* 431 U.S. 919, 97 S.Ct. 2187, 53 L.Ed.2d 231 (1977); *Pendergrast v. United States,* 332 A.2d 919, 924 (D.C.1975); Criminal Jury Instructions for the District of Columbia, Nos. 4.23, 4.25, *supra.* There was no such suggestion.

plea of *nolo contendere* without first addressing the defendant personally and determining that the plea is made voluntarily *with understanding of the nature of the charge* and the consequences of the plea....

(emphasis supplied).[13] Appellant maintains that by neglecting to inform him of the elements of the charge of second-degree murder while armed, the trial court failed to determine on the record that appellant understood the "nature" of that charge as required under the rule. In support of this contention, appellant relies primarily on the Supreme Court's construction of FED.R. CRIM.P. 11 in *McCarthy v. United States,* 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969).[14] There, the Court held that prejudice inheres in a trial court's failure to comply with Rule 11 and that a defendant is entitled to plead anew if a federal trial court has accepted his guilty plea without adhering to the procedure provided in the federal rule.[15]

In denying our appellant's motion for rehearing, the trial court rejected his Rule 11 contention. The trial court ruled that the guilty plea proceedings met "all of the requirements of Rule 11." We agree. Neither the language of Super.Ct.Crim.R. 11 nor the Court's construction of FED.R. CRIM.P. 11 in *McCarthy* supports appellant's interpretation of Super.Ct.Crim.R. 11. As the Court suggested in *McCarthy,* when a reviewing court evaluates the conduct of a Rule 11 inquiry by a trial court, " '[m]atters of reality, and not mere ritual, should be controlling.' " *McCarthy, supra,* 394 U.S. at 467–68 n. 20, 89 S.Ct. at 1171–72 n. 20 (citing *Kennedy v. United States,* 397 F.2d 16, 17 (6th Cir.1968), *cert. denied,* 394 U.S. 1018, 89 S.Ct. 1637, 23 L.Ed.2d 43 (1969)).[16]

We have already addressed, in our discussion of *Henderson,* those "matters of reality" as they bore upon appellant's understanding of the nature of the offense of second-degree murder. Indeed, as Justice

---

**13.** Following the December 1975 adoption of amendments to Federal Rule 11 by Congress, Super.Ct.Crim.R. 11 was amended in December 1976 to track the federal rule. At present both rules provide in relevant part, as follows:

(c) *Advice to defendant.* Before accepting a plea of guilty or nolo contendere, the Court must address the defendant personally in open court and inform him of, and determine that he understands, the following:

(1) the nature of the charge to which the plea is offered....

In its commentary on Subdivision (c)(1), the Advisory Committee on Federal Rules of Criminal Procedure noted that while the amended rule generally elaborates and clarifies the requirements of its predecessor,

Subdivision (c)(1) retains the current requirement that the court determine that the defendant understands the nature of the charge. This is a common requirement....

**14.** Because it is virtually identical to FED.R. CRIM.P. 11, local Rule 11 is to be construed in light of the meaning of the federal rule. *See Hicks, supra,* 362 A.2d at 113–14; *Bettis, supra,* 325 A.2d at 193–94 (both analyzing Super.Ct. Crim.R. 11 with the aid of cases construing FED.R.CRIM.P. 11). *See also Sellars v. United States,* 401 A.2d 974, 978 (D.C.1979) (stating that as a general matter, identical federal and Superior Court rules should be construed similarly).

**15.** The Court's decision in *McCarthy* was made pursuant to its supervisory power over the lower federal courts and was not founded upon constitutional grounds. *McCarthy, supra,* 394 U.S. at 464, 89 S.Ct. at 1169. In *Hicks v. United States, supra,* 362 A.2d at 113 n. 7, we noted that the Court's supervisory power probably encompasses Article I District of Columbia courts as well as Article III federal courts. In any event, *McCarthy* is an authoritative construction of the Rule 11 language in question.

**16.** We are aware that the Court stated in a footnote that where a defendant pleads to a lesser-included offense, addressing the defendant as to his understanding of the "essential elements" of the offense to which he pleads "would seem" to be a prerequisite to a determination that he understands the meaning of the charge. 394 U.S. at 467–68 n. 20, 89 S.Ct. at 1171–72 n. 20. However, the Court specifically declined to establish any general guidelines as to the precise nature of a Rule 11 inquiry "other than those expressed in the Rule itself." *Id.* The Court held that the "nature of the inquiry required by Rule 11 *must* necessarily vary from case to case." *Id.* (emphasis added).

Rehnquist pointed out in dissent in *Henderson,* the Supreme Court's holding there essentially imposed "on state courts, as a constitutional requirement, a definition of 'voluntariness' announced by this court in *McCarthy....*" *Henderson, supra,* 426 U.S. at 652, 96 S.Ct. at 2261 (Rehnquist, J., dissenting). Accordingly, we answer appellant's Rule 11 arguments by reference to our discussion of *Henderson.*[17]

In light of our conclusion that the plea proceedings satisfied the requirements of due process and of Rule 11, it follows that the trial judge did not abuse his discretion in denying appellant's requests that he be permitted to withdraw his guilty plea in order to correct manifest injustice. Because the conclusion that appellant's plea was intelligent and voluntary is based upon the record of the plea proceeding, it also follows that the trial judge did not err in declining to hold a hearing on this issue.

We close this discussion by observing that trial judges are well advised to assure that at some point during guilty plea proceedings a defendant is apprised of the elements of an offense to which a guilty plea is tendered. Such action would go a long way toward assuring that the court has satisfied due process and Rule 11 requirements concerning a defendant's understanding of the nature of the charges.

## VI

Appellant's second principal contention is that he was denied effective assistance of counsel in violation of the Sixth Amendment both before and during his guilty plea proceeding and before and during his sentencing proceeding.[18] With respect to the

alleged ineffectiveness of counsel before and during his plea proceeding, appellant contends that counsel failed to investigate his case fully, to develop a viable defense, to inform appellant that counsel was engaging in plea discussions with the government, to secure appellant's consent prior to concluding the plea bargain, and to assist appellant during the presentencing investigation. Appellant also contends that counsel pressured him into accepting the government's plea bargain agreement.

In its 1982 Memorandum Opinion denying appellant's motion for rehearing, the trial court ruled that appellant's contentions concerning the ineffectiveness of counsel before and during the plea proceeding were refuted by the record and were thus "palpably incredible." Our review of the record persuades us that the trial court did not err in rejecting appellant's ineffectiveness assertions.

 When a criminal defendant, in making a collateral attack upon a conviction arising out of a guilty plea, asserts that the plea resulted from ineffective assistance of counsel, he must show that the plea "was motivated by advice received from counsel which fell short of the range of competence demanded of attorneys in criminal cases." *Gibson, supra,* 388 A.2d at 1215 n. 4 (D.C. 1978) (citing *Tollett v. Henderson, supra,* 411 U.S. at 264–68, 93 S.Ct. at 1606–08, and *McMann v. Richardson,* 397 U.S. 759, 770– 71, 90 S.Ct. 1441, 1448–49, 25 L.Ed.2d 763 (1970)).

Appellant maintains that statements taken from him and his relatives show that because plea counsel was suffering from leukemia for the duration of appellant's

17. Numerous decisions by federal circuit courts of appeals following *McCarthy* have recognized that a recitation of the elements of the offense is not required. *See, e.g., United States v. Gray,* 611 F.2d 194, 199–200 (7th Cir.1979), *cert. denied,* 446 U.S. 911, 100 S.Ct. 1840, 64 L.Ed.2d 264 (1980); *United States v. Kriz,* 586 F.2d 1178, 1179–81 (8th Cir.1978), *cert. denied,* 442 U.S. 945, 99 S.Ct. 2893, 61 L.Ed.2d 317

(1979); *United States v. Wetterlin,* 583 F.2d 346, 350–51 (7th Cir.1978), *cert. denied,* 439 U.S. 1127, 99 S.Ct. 1044, 59 L.Ed.2d 88 (1979).

18. Plea counsel and sentencing counsel were different persons. Plea counsel was ill at the time of appellant's sentencing.

case, he was unable to communicate with appellant, to investigate the facts, or to develop a viable defense. Without more, we do not regard these factual assertions as establishing plea counsel's incompetence.

■ Because the record before us discloses that plea counsel died of leukemia in September 1977, we do not doubt that counsel may have been suffering from that illness during his representation of appellant, some 2 years earlier. However, apart from appellant's and his relatives' conclusory statements that counsel's illness prevented him from representing appellant adequately, there is nothing in the record to support appellant's contentions. Appellant concedes that plea counsel's files of the case were not available to him. We are thus left without that means of testing appellant's allegations about counsel's inadequacies. Moreover, we find that appellant's assertions are contradicted by the case files and plea record.

The case files demonstrate that plea counsel appeared with appellant on eight different occasions before the court between appellant's presentment in April 1975 and the plea proceeding in November 1975. The occasions included the preliminary hearing, arraignment, and several status hearings. While such appearances do not necessarily indicate counsel's adequate preparation, they tend to refute appellant's allegation that counsel failed to communicate with him and did not actively attempt to represent appellant's interests.

Furthermore, appellant was faced with a ten-count indictment that included five life counts and a mandatory sentence of 20-years-to-life for first-degree murder. He also faced the possibility of consecutive life sentences on the remaining charges of armed burglary in the first degree and armed robbery. As part of the plea bargain arranged by appellant's counsel the government agreed to drop the nine other counts in return for a plea to second-degree mur-

der while armed. Defense counsel succeeded in reducing substantially appellant's exposure to incarceration. The plea record also shows that appellant was confronted with a strong government case. He accepted as fair and accurate a detailed account of the factual basis for the charges against him. Under the circumstances, a plea to the lesser-included offense of second-degree murder can scarcely be said to indicate ineffective assistance of counsel.

Appellant directly and unequivocally told the court that he was satisfied with the services and advice that his counsel had rendered him regarding his plea. Moreover, when questioned by the court, defense counsel represented that he had spent considerable time in determining that a guilty plea would be "the smartest thing to do" and that there was a strong factual basis for it. The prosecutor represented that he had spoken "thoroughly" about the plea agreement with defense counsel. We are thus unable to conclude that appellant's assertions overcome the "strong presumption of verity" that attaches to such "[s]olemn declarations" of a defendant, his lawyer, and the prosecutor at plea hearing. *Blackledge v. Allison,* 431 U.S. 63, 73–74, 97 S.Ct. 1621, 1628–29, 52 L.Ed.2d 136 (1977).

■ Appellant's assertion that plea counsel's failure to prepare him for presentence interviews prejudiced his sentencing is similarly without merit. We are mindful that defense counsel has a significant role to play in connection with sentencing. *See* American Bar Association Standards Relating to the Defense Function § 8.1 (1971). However, in light of appellant's extensive juvenile record, upon which the court commented in sentencing appellant as an adult, and the facts surrounding appellant's murder of Minor, it is purely speculative for appellant to suggest vaguely that counsel's preparing him for presentence interviews would have had any impact on the court's sentencing decision.

For the foregoing reasons, we are persuaded that appellant could not have

carried his burden of establishing that plea counsel's representation sufficiently prejudiced his case to amount to ineffective assistance. The burden of proving prejudice is heavy. *Thornton v. United States,* 357 A.2d 429, 435 (D.C.), *cert. denied,* 429 U.S. 1024, 97 S.Ct. 644, 50 L.Ed.2d 626 (1976). We therefore affirm the trial court's denial of appellant's motion for rehearing with respect to his claim of ineffectiveness of plea counsel.[19]

With respect to the alleged ineffectiveness of sentencing counsel, appellant asserts that counsel did not reveal the contents of the presentence reports to him, failed to correct certain inaccuracies by the prosecutor in his allocution, and did not call the court's attention to certain mitigating factors.

 In its 1980 Memorandum Opinion denying appellant's § 23–110 motion, the trial court ruled that appellant's allegations concerning the ineffectiveness of sentencing counsel were vague and generalized, and were contradicted by the record. As noted earlier, the court complied with its duty under Super.Ct.Crim.R. 32(b)(3) to make appellant's presentence report available. *See* note 2, *supra.* Appellant made no request to see it at the time, and has not convinced us that we should regard counsel's failure to show it to him as demonstrating incompetence.

Appellant's other assertions of ineffectiveness on the part of sentencing counsel also are unpersuasive. Appellant has failed to point out any significant impropriety in the prosecutor's allocution which counsel should have corrected. Nor has he estab-

lished that there existed mitigating factors that were not brought to the trial court's attention.

 Even if appellant had shown that sentencing counsel was incompetent, he would not be entitled to collateral relief unless he had also shown that counsel's actions prejudiced him. In light of the highly negative presentence reports, counsel requested that the court follow the recommendation for a federal designation and urged that its sentence be fashioned to afford appellant the best opportunity for rehabilitation. The sentence imposed was considerably less severe than that which the court could have imposed. Based upon our review of the record, we conclude that appellant has failed to show that he was prejudiced by sentencing counsel's representation. In sum, we are satisfied that appellant's arguments of ineffective assistance were, as the trial court found, either refuted by the record or vague and conclusory. Therefore, no hearing on the ineffectiveness claims was necessary.

Accordingly, the orders appealed . from are

*Affirmed.*

---

19. We also note that these are appellant's second and third successive § 23–110 motions in which he has alleged ineffective assistance of plea counsel. Under D.C.Code § 23–110(e), a trial court "shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner." While strict principles of res judicata do not apply in § 23–110 proceedings, *Pettaway v. United States,* 390 A.2d 981, 985–86 (D.C.1978), "the

concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas." *United States v. Timmreck,* 441 U.S. 780, 784, 99 S.Ct. 2085, 2087, 60 L.Ed.2d 634 (1979) (footnote omitted). We address the merits of appellant's motion for rehearing only because this motion—unlike his two earlier ones—was made with aid of counsel, and because this motion alleged new grounds of ineffectiveness.