ROBERT HICKS THOMPSON AND NANCY JO HENRY (FORMERLY THOMPSON), PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1589-73.    Filed July 26, 1976.

*Joseph A. Whittle,* for the petitioners.
*Robert P. Edler,* for the respondent.

IRWIN, *Judge:* Respondent determined a deficiency of $31,314.94 in petitioners' Federal income tax for the year 1970. The sole issue remaining for our determination is whether petitioners may deduct the net operating loss sustained by their wholly owned corporation during its taxable year beginning December 1, 1969, and ending November 30, 1970. The answer turns on whether the corporation filed a valid election under section 1372(c)(1)[1] for such year.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

Robert Hicks Thompson and Nancy Jo Henry, formerly husband and wife, filed a joint income tax return for the calendar year 1970 with the Southeast Internal Revenue Service Center at Chamblee, Ga. At the time of the filing of the petition herein, Robert Hicks Thompson was a resident of Brunswick, Ga., and Nancy Jo Henry was a resident of Narberth, Pa. Nancy Jo Henry is a petitioner solely by virtue of having signed a joint return and the designation "petitioner" will hereafter refer to Robert Hicks Thompson.

Transcontinental Aviation, Ltd., Inc. (hereafter Transcontinental or the corporation), was incorporated on January 16, 1969. Petitioner owned all of Transcontinental's stock from the date of incorporation through 1970. Transcontinental's business was located at the Brunswick, Ga., airport and its principal activities included the rental of aircraft and the

---

[1] All section references are to the Internal Revenue Code of 1954 as in effect during the period in issue.

sale of gasoline and aviation fuel. Transcontinental adopted a taxable year ending November 30 and filed a U.S. Corporation Income Tax Return, Form 1120, for its first taxable year which ended November 30, 1969, on which it reported a net loss of $211.

On December 31, 1969, petitioner signed a Form 2553, Election by Small Business Corporation (hereafter Form 2553), which had been prepared by Terrell Reddick (hereafter Reddick), an associate with the accounting firm of Fuller & Deloach. Although the Form 2553 was prepared and signed with the intention that the election was to be effective for Transcontinental's taxable year beginning December 1, 1969, an effective date of January 1, 1969, was erroneously typed on the form. Also due to an error on Reddick's part, the Form 2553 contained informational responses requested only for corporations electing during their first taxable year of existence.

After signing the Form 2553 on December 31, 1969, petitioner placed the form in a properly addressed and stamped envelope and instructed his mail clerk, Toby Wilson (Wilson), to deposit the envelope in the mail that day. Wilson deposited the envelope containing the Form 2553 in a mailbox located directly in front of the Brunswick Post Office between 5 p.m. and 5:15 p.m. on December 31, 1969. According to procedures followed by the Brunswick Post Office in December 1969, all mail deposited in that particular mailbox by 6:10 p.m. on December 31, 1969, would have received a postmark of even date. Normally, an envelope addressed to the Southeast Internal Revenue Service Center, Chamblee, Ga., which was deposited in the mailbox located immediately in front of the Brunswick Post Office before 6:10 p.m. on December 31, 1969, would have reached its destination on the next business day, Friday, January 2, 1970.

Procedure upon the receipt of mail at the Internal Revenue Service Center at Chamblee, Ga., in 1970 was to stamp all mail and documents received, showing the date so received. The Form 2553, signed by petitioner on December 31, 1969, was received by regular mail at the Southeast Service Center and is stamped as having been received on January 6, 1970. The envelope within which the Form 2553 was mailed was not retained with the election and was not offered as evidence.

For its taxable year ending November 30, 1970, Transcontinental filed a U.S. Small Business Corporation Income Tax

Return, Form 1120-S, on which it reported a loss of $58,818.75. On his return for 1970, petitioner deducted $58,818.75, claiming it as a small business corporation loss from Transcontinental. Respondent disallowed such deduction on the ground that Transcontinental was not a valid small business corporation since the corporation did not file a valid election under section 1372(c) for its taxable year beginning December 1, 1969, and ending November 30, 1970.

OPINION

We must decide whether petitioner is entitled to a deduction for the net operating loss sustained by his wholly owned corporation, Transcontinental, during its taxable year beginning December 1, 1969, and ending November 30, 1970. Petitioner is entitled to such a deduction, under section 1374(b), if a valid election to be treated as a small business corporation was in effect for Transcontinental's taxable year beginning December 1, 1969. Respondent contends that such an election was not in effect because the Form 2553 was not filed within the time limits set out in section 1372(c)(1).[2] Under section 1372(c)(1) an election to be treated as a small business corporation may be made for any taxable year at any time during the first month of such taxable year or during the month preceding such first month. Respondent points out that the Form 2553 represented that the election was to be effective for the corporation's taxable year beginning January 1, 1969, and that it was received by respondent on January 6, 1970, nearly 1 year past the final day for filing an election for a taxable year beginning January 1, 1969. In the alternative, respondent argues that even if the Form 2553 is treated as an election for the corporation's taxable year beginning December 1, 1969, it was not filed during the first month of that taxable year nor during the month preceding that first such month.

Petitioner argues that the election was intended to be effective for the corporation's taxable year beginning December 1, 1969. Relying on section 7502(a)(1),[3] petitioner maintains that the

---

[2] (c) WHERE AND HOW MADE.—

(1) IN GENERAL.—An election under subsection (a) may be made by a small business corporation for any taxable year at any time during the first month of such taxable year, or at any time during the month preceding such first month. Such election shall be made in such manner as the Secretary or his delegate shall prescribe by regulations.

[3] (a) GENERAL RULE.—

election was filed within the time limits set out in section 1372(c)(1).

The final day for filing an election to be treated as a small business corporation for the corporation's taxable year beginning December 1, 1969, was Wednesday, December 31, 1969. The Form 2553 was received at the Internal Revenue Southeast Service Center on January 6, 1970. Section 7502(a)(1) provides that a document received after the final date for filing such document but mailed on or before the final date is deemed filed on the date of the postmark, if the postmark is timely. Since the envelope within which the Form 2553 was mailed was not retained, there is no postmark upon which we can rely in determining whether the election was timely filed. However, we have recently held that the presence of a postmark is not the sine qua non to invoking section 7502. *Fred Sylvan,* 65 T.C. 548 (1975). In *Sylvan* we indicated that even in the absence of a postmark, the provisions of section 7502 would be triggered by evidence sufficient to convince the Court that a postmark, if present, would have been timely.[4]

While the evidence here is not as conclusive as in *Sylvan,*[5] we are nevertheless persuaded that the Form 2553 was placed in an envelope properly addressed and with the proper postage affixed and that the envelope was deposited in the mail on December 31, 1969, in sufficient time to have received a postmark of December 31, 1969. The testimony given by petitioner and by his mail clerk

---

(1) DATE OF DELIVERY.—If any return, claim, statement, or other document required to be filed, or any payment required to be made, within a prescribed period or on or before a prescribed date under authority of any provision of the internal revenue laws is, after such period or such date, delivered by United States mail to the agency, officer, or office with which such return, claim, statement, or other document is required to be filed, or to which such payment is required to be made, the date of the United States postmark stamped on the cover in which such return, claim, statement, or other document, or payment, is mailed shall be deemed to be the date of delivery or the date of payment, as the case may be.

[4] See also *Hotel Equities Corp.,* 65 T.C. 528 (1975), where we *assumed* that an envelope received a timely postmark. That assumption was based upon the following: (1) The parties agreed that the envelope was timely mailed; and (2) the only possible *direct* evidence of a postmark date, the envelope itself, had been destroyed by respondent. In making that assumption, we implicitly recognized the inherent unfairness of not considering indirect evidence of a timely postmark, i.e., timely mailing, when the only direct evidence was destroyed by respondent.

[5] In *Sylvan,* the petition was received by the Court on the morning following the final day for filing and we were thereby able to conclude, without taking additional evidence, that the petition was mailed in time to have received a timely postmark in the normal course of business.

was consistent and unequivocal and was not shaken upon cross-examination. Relying on that testimony, we have found the Form 2553 was actually placed in the mailbox, located in front of the Brunswick Post Office, between 5 p.m. and 5:15 p.m. on December 31, 1969. Linking that testimony to the testimony of the Brunswick postal official that all mail deposited in that particular mailbox by 6:10 p.m. on December 31, 1969, would have received a postmark of even date, enables us to conclude that the envelope, within which the Form 2553 was mailed, received a postmark date of December 31, 1969. We, therefore, hold that the Form 2553 was filed on December 31, 1969.[6]

Respondent argues, however, that even if the Form 2553 was filed on December 31, 1969, it was not a valid election for the corporation's taxable year beginning December 1, 1969, due to the fact that the Form 2553 indicated that the election was to be effective for the corporation's taxable year beginning January 1, 1969. Since the Form 2553 indicated on its face that it was to be effective for the corporation's taxable year beginning January 1, 1969, respondent contends that it was incapable of being a valid election for the year beginning December 1, 1969. We disagree. The election, filed within the first month of the corporation's taxable year beginning December 1, 1969, was a valid election for that year, notwithstanding the fact that the form indicated an effective date of January 1, 1969.

Although we have no doubt that the Form 2553 was prepared and signed with the intention that it was to be effective for the corporation's taxable year beginning December 1, 1969,[7] it is not necessary to reach that conclusion in order to hold for petitioner. There is precedent in this Court for holding that an otherwise valid election, filed within the first month of a corporation's

---

[6] There is language in *Rich v. Commissioner,* 250 F. 2d 170, 174 (5th Cir. 1957), suggesting that the Fifth Circuit may view the presence of a postmark as the sine qua non to invoking sec. 7502(a). However, *Rich* is not squarely on point with the case now before us and we have, therefore, not felt bound by that decision in reaching a conclusion here. See *Jack E. Golsen,* 54 T.C. 742, 757 (1970), affd. 445 F. 2d 985 (10th Cir. 1971), cert. denied 404 U.S. 940 (1971).

[7] In this regard we have noted, in addition to the testimony of petitioner and his accountant, the following factors:

(1) The corporation was not in existence on Jan. 1, 1969, and could not have had a taxable year beginning with that date.

(2) Since its inception the corporation has been on a fiscal year ending Nov. 30.

(3) The corporation in fact filed a regular U.S. Corporation Income Tax Return, Form 1120, for its first taxable year which ended on Nov. 30, 1969.

(4) The first time the corporation filed a U.S. Small Business Corporation Income Tax Return, Form 1120-S, was for its taxable year beginning Dec. 1, 1969.

taxable year, or during the month preceding such first month, is a valid election for that year regardless of the date for which the election is either stated or intended to be effective. *Ralph L. Brutsche,* 65 T.C. 1034 (1976). In *Brutsche* the corporation was organized in the spring of 1961 and adopted a fiscal year ending June 30. The corporation's first taxable year began May 1, 1961 (the date upon which it first had shareholders), and ended on June 30, 1961. A Form 2553, which stated that the election was to be effective for the taxable year "May 26, 1961 to be determined" was filed on June 26, 1961. We held that the election was not timely with respect to the corporation's first taxable year which ended June 30, 1961, due to the fact that it was filed more than 1 month after the beginning of that taxable year. We nevertheless held that the same Form 2553, Election by Small Business Corporation, filed during the month preceding the corporation's taxable year beginning July 1, 1961, was a valid election for that year, notwithstanding the fact that a different effective date appeared on the form. Following *Brutsche,* we likewise hold here that the Form 2553, filed on December 31, 1969, was a valid election for the corporation's taxable year which began December 1, 1969.

Since Transcontinental timely filed a valid election to be treated as a small business corporation for its taxable year beginning December 1, 1969, petitioner is entitled to deduct the net operating loss sustained by Transcontinental during that year.

Due to concessions on other issues,

*Decision will be entered under Rule 155.*