AARON J. LEVE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Leve v. Commissioner
Docket No. 10157-81, 1531-82.
United States Tax Court
T.C. Memo 1985-255; 1985 Tax Ct. Memo LEXIS 374; 49 T.C.M. (CCH) 1575; T.C.M. (RIA) 85255; May 29, 1985. M. Owen Mohler, for the petitioner. Elsie Hall, for the respondent. WILBUR
MEMORANDUM FINDINGS OF FACT AND OPINION WILBUR, Judge: Respondent determined deficiencies in petitioner's Federal income taxes for 1977 and 1978 in the amounts of $18,052.28 and $17,347.32, respectively. For the most part, [1] the deficiencies resulted from respondent's determination that Turtle Island Enterprises, *375 Inc., a corporation in which petitioner was the sole shareholder, was not an "electing small business corporation as defined in section 1371(b) of the Internal Revenue Code." [2] We must therefore decide whether petitioner delivered to respondent a valid election to be taxed under the provisions of Subchapter S of the Internal Revenue Code. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation and attached exhibits are incorporated by this reference. Petitioner resided in Helmsburg, Indiana, when the petitions were filed in these cases. He timely filed individual Federal income tax returns for 1977 and 1978. Turtle Island Enterprises, Inc., was incorporated in the state of Indiana on March 23, 1976. On that date, petitioner acquired all 1,000 outstanding shares of the corporation. From March 23, 1976 until August 19, 1978, Turtle *376 Island Enterprises, Inc. was engaged in the principal business of operating a tearoom called "Turtle Island Coffee Shop." Petitioner employed Irwin Katz, senior partner in the accounting firm of Katz, Sapper & Miller, to assist in setting up Turtle Island Enterprises, Inc. Irwin Katz has been a certified public accountant for 35 years, and during that time had helped to organize approximately 150 Subchapter S corporations. He had been the accountant for petitioner's parents for 25 years, and had assisted them in establishing several Subchapter S corporations in the past. In late March or early April of 1976, Katz delivered to the home of petitioner's parents Internal Revenue Service forms that related to the organization of Turtle Island Enterprises, Inc. One form was the SS4, entitled "Application for Employer Identification Number," and the other form was the Form 2553, entitled "Election by a Small Business Corporation." Both forms had been prepared by a staff accountant from Katz' firm. Katz delivered two Forms 2553, so that petitioner might retain one form for his records. Along with the forms, Katz delivered two envelopes addressed to the Internal Revenue Service. Katz *377 did not advise petitioner to expect a letter acknowledging receipt and acceptance of the Form 2553 from the Internal Revenue Service. Petitioner signed the Form SS4 and the two Forms 2553 on April 6, 1976, in the presence of his mother, Diane Leve. Mrs. Leve retained one of the Forms 2553 for petitioner's records. She enclosed the other Form 2553, along with the Form SS4, in one of the envelopes addressed to the Internal Revenue Service. The next morning she placed a stamp on the envelope containing the two forms, and deposited it at a local post office. The forms were sent by regular mail. Petitioner received no correspondence from respondent until more than 1 year had passed. At that time, by letter dated May 9, 1977, respondent notifiec Turtle Island Enterprises, Inc. that it was unable to process its U.S. Small Business Corporation Income Tax Return (Form 1120S) for 1976 because it has no record of the corporation filing a Form 2553 election to be treated as a small business corporation. [3] Similar letters followed relating to the corporation's 1977 and 1978 returns. *378 The accounting firm of Katz, Sapper and Miller responded by letter on May 18, 1977, by informing respondent that the Form 2553 had been mailed on April 6, 1976. [4] The letter concluded with a request to "[p]lease start whatever procedure is necessary to trace and locate the election," and included a copy of the form that petitioner had retained for his records. Respondent commenced a special search for the election form on September 27, 1982. The search determined that respondent had no record of receiving the Form 2553. There was evidence, however, that a Form SS4, which petitioner had attached to his election form, was received by respondent. Respondent has implemented an elaborate system designed to ensure that documents are processed in the proper channels. For instance, if petitioner had mailed the Forms SS4 and 2553 to respondent in one envelope, the Internal Revenue Service normally would have followed the following procedure: The envelope would have arrived in the Receipt and Control Division, where it would have been opened by a machine. An employee would have removed its contents, *379 and the envelope would have been machine-searched to ensure that it was empty. The Form SS4 then would have been hand-delivered to a unit of the Entity Control Section, and the Form 2553 would have been hand-delivered to a separate unit of the same section. The normal procedure includes a series of checks designed to prevent the loss of documents. For example, janitors are instructed to sift through wastebaskets and remove all documents that are not torn in half. If, however, respondent had received a Form 2553 identical to the copy retained by petitioner, the form normally would have been returned to petitioner because certain blanks had not been filled in. The blanks sought information relating to (1) the date the corporation first had shareholders, (2) the date the corporation first had assets, and (3) the date the corporation began doing business. However, while these blanks were not filled in, the form did include information that petitioner was the only shareholder and that he had been issued all 1,000 shares on March 23, 1976, the date of incorporation. Petitioner normally would have received the returned form with a letter advising him that his election would still be *380 considered timely if he resubmitted the form within 45 days. No copy of the form would have been retained by respondent. The only direct evidence that the form had been received would have been a cover letter sent to petitioner along with the rejected form. If the cover letter existed, however, it would have been retained in an "employee source document folder" which was destroyed in accordance with normal procedure on July 13, 1982. Along with the cover letter, petitioner's Form SS4 would have been retained in the employee source document folder. Respondent had been notified that petitioner had mailed both forms together in the same envelope by letter dated August 6, 1981, almost 1 year prior to the destruction of the employee source document folder. Respondent commenced the special search for the Form 2553 over 2 months after the folder was destroyed. OPINION As in effect during the years in issue, section 1372 permits certain corporations to elect not to be subject to the income taxes imposed by Subtitle A, Chapter 1 of the Internal Revenue Code. Instead, the shareholders must consent to be taxed individually on the corporation's undistributed taxable income. Sections *381 1373; 1372(a). In order to be effective, the election form "containing the information required by such form," must be "filed" with the Internal Revenue Service within certain specified times. Section 1.1372-2(a), (b), Income Tax Regs.
This case presents two issues with respect to the Subchapter S election of Turtle Island Enterprises, Inc. First, we must decide whether the corporation in fact "filed" the election form with respondent. If the form was filed, we must decide whether it contained sufficient information to constitute a valid Subchapter S election. In general, a document is considered "filed" when it is delivered. E.g., Hotel Equities Corporation v. Commissioner,65 T.C. 528, 531 (1975), affd. 546 F.2d 725 (7th Cir. 1976). We are convinced by the testimony of several credible witnesses that the election form was indeed deposited in the United States mail. Katz testified that he delivered the forms to the Leve's home. Petitioner testified that he signed the forms in the presence of his mother. Mrs. Leve testified that she observed her son signing the forms, and that she placed them in one envelope which she deposited at a united *382 States post office. This testimony gives rise to a strong presumption of delivery. In re NimzTransportation, Inc.,505 F.2d 177, 179 (7th Cir. 1974); MitchellOffset Plate Service, Inc. v. Commissioner,53 T.C. 235, 240 (1969); Jones v. United States,226 F.2d 24, 27 (9th Cir. 1955). The evidence presented by respondent is insufficient to rebut this presumption that the election was delivered, and therefore "filed." Indeed, the evidence presented serves to buttress our conclusion. The expert witness testified as follows: Q. In looking at this document, is there anything that appears thereon or which is missing on the form which would have affected the processing of the form? A. Yes, there is. * * * There are three items that are deleted and the three items are date corporation first had shareholders, date corporation first had assets and date corporation began doing business. * * * Q. In the absence of those items what would have happened to the form? A. It would have been sent back to the taxpayer for resubmission with 45 days. Q. * * * Would it have been a xerox copy of the Form 2553? A. No, it would *383 have been the original. Q. So there would have been no record of the original Form 2553 if it were sent back under such circumstances unless it were resubmitted later. Is that correct? A. At this point, no. * * * HE COURT: No record of it being sent back either. That is not made. THE WITNESS: No. Thus, if normal procedure had been followed, the form would have been returned to petitioner. We are persuaded that the form was received and that the intent to return it to petitioner was never effected, either due to mishandling within the agency (for example, misaddressing the envelope, etc.), or to mishandling by the Post Office. Several facts lead us to conclude that respondent may have misplaced the form. First, respondent notified petitioner that he was unable to locate petitioner's Form 1120S, the small business corporation tax return for 1976, 2 years after acknowledging that he had received the form. Such evidence suggests that respondent may have misplaced other documents relating to Turtle Island Enterprises, Inc. What is more, respondent destroyed the employee source document folder, which contained a form that had been sent in one envelope with the missing *384 Form 2553, several months after having been notified of the relevant facts. In sum, the record offers a number of scenarios that would leave respondent with no record of receiving the election form even if it had been received. We therefore cannot conclude that respondent has overcome the presumption of delivery. We also find under the circumstances before us that the form filed by petitioner constituted a valid election in accordance with section 1.1372-2(a), Income Tax Regs. The Form 2553 contains three small boxes which request the dates on which the corporation first had shareholders, assets, and began doing business. Although petitioner did not complete these boxes, the information was readily available to repondent by a cursory review of the rest of the form. One line informed respondent that the date of incorporation was March 23, 1976, and another stated that petitioner acquired all 1,000 shares on that date. The form clearly indicated, therefore, that the corporation first had shareholders on March 23, 1976, and that the period for a timely election was to be measured from this date. The purpose of requesting the dates the corporation first had shareholders, assets, *385 and gegan doing business is to determine whether the election was timely filed, that is, filed within the first month of the taxable year of a new corporation.See section 1.1372-2(b), Income Tax Regs., providing that the "first month of the taxable year of a new corporation does not begin until the corporation has shareholders or acquires assets or begins doing business, whichever is the first to occur." [Emphasis added.] Petitioner correctly states that "a corporation can be in existence without obtaining all of the above three conditions at the same time," see Artukovich v.Commissioner,61 T.C. 100 (1973). Had the form been returned to petitioner, undoubtedly compliance in form as well as substance would have been effected. However, to deny petitioner the benefits of Subchapter S on the peculiar facts before us is a hard result indeed and one that is not required. An overly formalistic approach to this problem is simply not warranted under the unusuall facts before us. This Court in the past has approached problems of this nature with flexibility and common sense. E.g., Thompson v.Commissioner,66 T.C. 737 (1976). Thus, we *386 have held that a Form 2553 may be sufficient regardless of the date for which the election is either stated or intended to be effective. Thompsonv. Commissioner,supra at 742-743; Brutsche v. Commissioner,65 T.C. 1034 (1976), affd. on this issue 585 F.2d 436 (10th Cir. 1978). In the instant case information sufficient to determine whether the election was timely filed was provided on the election form. On its face, the form appears to represent "an honest and genuine endeavor to satisfy the law." Cf. ZellerbachPaper Co. v. Helvering,293 U.S. 172, 180 (1934); Beard v.Commissioner,82 T.C. 766, 778-779 (1984). In the normal course of events, respondent would have returned the form to petitioner to enable petitioner to rspond to all questions. A common sense approach to the peculiar circumstances in this case requires that we hold for petitioner. Due to concessions by petitioners, Decisions will be entered under Rule 155.
Footnotes
1. Other items contributing to the deficiencies have been conceded by petitioner. ↩
2. All statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue. All references to "Rules" refer to the Tax Court Rules of Practice and Procedure.↩
3. Two years after this acknowledgment that he had received the Form 1120S, respondent informed petitioner that he was unable to locate the return.↩
4. In fact, the letter was actually mailed 1 day later, on April 7, 1976.↩