T.C. Memo. 1997-558


UNITED STATES TAX COURT


GEORGE JOHNSON, JR., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 23004-92.          Filed December 22, 1997.


<u>Robert I. White</u> and <u>Shelley Cashion</u>, for petitioner.

<u>Richard T. Cummings</u> and <u>Shelia Dansby Harvey</u>, for
respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

GALE, <u>Judge</u>:   This case is before the Court on petitioner's
Motion for Partial Summary Judgment (petitioner's motion) and
respondent's Cross-Motion for Partial Summary Judgment
(respondent's cross-motion).  The parties have filed various

briefs and memoranda in support of and in opposition to these motions. Respondent determined the following deficiencies in, and additions to, petitioner's[1] Federal income taxes:

| Year | Deficiency | Addition to Tax Sec. 6653(b) |
|------|------------|------------------------------|
| 1979 | $50,487.36 | $25,243.68 |
| 1980 | 52,617.33 | 26,308.67 |

Unless otherwise noted, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. For taxable year 1979, respondent determined a total adjustment to income of $130,930.37, of which $122,975.37 was attributed to undistributed taxable income from Johnson Programming Services, Inc. (JPS). For taxable year 1980, respondent determined a total adjustment to income of $105,430.17, of which $58,602.34 was attributed to undistributed taxable income from JPS. Petitioner's motion requests the Court to rule as a matter of law that JPS was not a corporation taxable under subchapter S of the Internal Revenue Code (S corporation). Respondent's cross-motion requests the Court to rule as a matter

---

[1] In the notice of deficiency, respondent also determined the deficiencies (but not the additions to tax) against petitioner's wife at the time, Mary Ann Johnson. Respondent has agreed that Mary Ann Johnson qualifies as an innocent spouse, and she is not a petitioner in this case.

of law that petitioner is precluded from challenging the validity of the S corporation status of JPS. We deny both motions.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. We incorporate by this reference the stipulation of facts and attached exhibits. At the time of filing the petition, petitioner resided in Houston, Texas.

Petitioner incorporated JPS on October 25, 1976, with petitioner and his wife, Mary Ann Johnson, as directors and the sole officers.[2] Petitioner was president and Mary Ann Johnson was secretary. In addition to them, JPS had, at most, three other employees during the period of 1975-77, one of whom was petitioner's daughter. On November 26, 1976, which was the Friday after Thanksgiving Day, the Internal Revenue Service Fresno Service Center (Fresno Service Center) stamped "Received" on the face of a Form 2553, Election by a Small Business Corporation, listing JPS as the electing corporation. The parties have stipulated that it is unknown whether the Form 2553 was mailed, hand delivered, or transported by private courier to the Fresno Service Center.

---

[2] It has been alleged, and the parties do not appear to dispute, that petitioner and Mary Ann Johnson were the only shareholders of JPS. However, the only evidence of that allegation currently in the record is a Form 2553, the validity and authorship of which are disputed.

The Form 2553 contained the following information:  JPS's name and address, the principal business activity of JPS, the number of shares issued, the name of a predecessor business ("Johnson Programming Services"), the date and place of incorporation ("10-25-76 California"), and three signatures, one apparently the signature of petitioner as president, and the other two apparently the signatures of petitioner and Mary Ann Johnson as shareholders consenting to the election.  The parties have stipulated that in the opinion of respondent's handwriting expert, there is a high degree of probability that the apparent signature of petitioner as president of JPS is a traced signature, and the apparent signature of petitioner as shareholder is a simulated signature.  The parties have stipulated that if Mary Ann Johnson were called to testify, she would testify that the apparent signature of Mary Ann Johnson on the Form 2553 does not appear to her to be her signature.

On January 7, 1977, the Fresno Service Center sent a letter accompanied by the original Form 2553 described above.  The letter was addressed to JPS at the address listed on the Form 2553 and informed the recipient that the Form 2553 could not be processed because the following information was missing:  The date JPS first had shareholders; the date JPS first had assets; the date JPS began doing business; the last month of the taxable year for which JPS's annual return would be filed; and for each

shareholder, the shareholder's name, address, and Social Security number, the number of shares held and the dates acquired, and the Internal Revenue Service (IRS) office where the shareholder's individual return would be filed.

This letter accurately stated most of the information missing when the Form 2553 was first received by the Fresno Service Center, but also missing was JPS's employer identification number and the beginning date of the taxable year for which the election was to be effective.

The Form 2553 was returned to the Fresno Service Center and stamped "Received" a second time on January 12, 1977. This time the Form 2553 contained all of the previously missing information.

                              OPINION

For both petitioner's motion and respondent's cross-motion, the normal standards of summary judgment apply. Thus, for each motion: We will grant summary judgment only if there is no genuine issue as to any material fact and a decision may be rendered as a matter of law; the moving party has the burden to show there is no issue of fact; and we view the facts in the light most favorable to the party opposing the motion. Rule 121(b); Pert v. Commissioner, 105 T.C. 370, 372 (1995).

Petitioner's motion raises the question of whether the election on the Form 2553 (S corporation election) was invalid as

a matter of law.  Petitioner argues that the S corporation election was invalid and that JPS was therefore not an S corporation during the years in issue in this case.  Respondent's cross-motion presents the issue of whether the doctrine of duty of consistency prevents petitioner from denying that JPS was an S corporation during the years in issue.  We address respondent's cross-motion first, because if respondent is correct that the duty of consistency applies, then we must hold for respondent even if petitioner's argument about the invalidity of the S corporation election is correct in substance.  Thus, we turn to an examination of the duty of consistency.

Respondent's Cross-Motion

The Tax Court and the Court of Appeals for the Fifth Circuit (to which an appeal in this case would lie) have adopted the triune standard for the application of the duty of consistency. Herrington v. Commissioner, 854 F.2d 755, 758 (5th Cir. 1988), affg. Glass v. Commissioner, 87 T.C. 1087 (1986); Estate of Letts v. Commissioner, 109 T.C. ___ (1997); Cluck v. Commissioner, 105 T.C. 324, 332 (1995).  The following elements must be present for the duty of consistency to apply:

> (1) a representation or report by the taxpayer; (2) on which the Commissioner has relied; and (3) an attempt by the taxpayer after the statute of limitations has run to change the previous representation or to recharacterize the situation in such a way as to harm the Commissioner. * * *

Herrington v. Commissioner, supra at 758 (citing Beltzer v. United States, 495 F.2d 211, 212 (8th Cir. 1974)); see also Cluck v. Commissioner, supra at 332. If all of the elements are present, the Commissioner may act as though the previous representation is true, even if it is not, because the taxpayer is prevented from denying its truth. Herrington v. Commissioner, supra at 758.

With respect to the first element of the duty of consistency, respondent alleges that petitioner made representations to respondent that JPS was an S corporation. In particular, respondent alleges that the initial representation occurred when petitioner filed the Form 2553 electing S corporation status, and that petitioner engaged in subsequent representations during taxable years 1977-80 by causing JPS to file tax returns as an S corporation (Forms 1120-S), and by including pass-through income and loss from JPS on his tax returns (Forms 1040) for the years in issue. We first note that the record contains no Forms 1120-S filed by JPS and no Forms 1040 filed by petitioner. Thus, there is no evidence in the record with respect to those forms from which we can make a factual determination as to any representation by petitioner; we have only respondent's allegations on brief, which petitioner

addresses in an affidavit.[3]  Summary judgment cannot be granted on the basis of allegations of fact in respondent's brief, even if petitioner were to fail to controvert the allegations.  See Smith v. Commissioner, T.C. Memo. 1983-706.

With respect to the Form 2553, there also remains a question of fact as to whether the Form 2553 was a representation made by petitioner.  Respondent concedes that the apparent signatures of petitioner were not affixed by him.  On the other hand, respondent's handwriting expert did not examine the apparent signature of Mary Ann Johnson, and respondent makes no concession with respect to that signature.  In any event, respondent argues that petitioner authorized the signatures or otherwise allowed the Form 2553 to be filed and subsequently supplemented, and that such acts of authorization or allowance constitute a representation for purposes of the duty of consistency. Petitioner has filed an affidavit stating that the signatures that were apparently his on the Form 2553 were not authorized by him.  We find that petitioner's affidavit is sufficient to raise

---

[3] In his second affidavit, petitioner asserts that his joint tax returns for the years in issue were prepared by accountants and presented to him for signature.  Petitioner also asserts that the corporate returns for JPS were prepared by accountants and presented to him for signature, and that decisions to use Form 1120S rather than 1120 were made by accountants.  He further asserts that he did not know the difference between a C corporation and an S corporation prior to or during the years in issue.

a genuine issue of material fact as to whether petitioner authorized the signatures or allowed the Form 2553 to be filed.

Because there remain genuine issues of material fact as to whether petitioner made representations to respondent with respect to the S corporation status of JPS, we will deny respondent's cross-motion. We next turn to petitioner's motion.

Petitioner's Motion

Petitioner's motion asks us to hold that JPS was not an S corporation during the years in issue because no valid S corporation election was made. Each party argues that the other has the burden of proof with respect to the validity of JPS's election of S corporation status. However, the allocation of the burden of proof depends on why the issue of JPS's status as an S corporation is being raised. Insofar as respondent's deficiency determination is premised upon JPS's S corporation status, petitioner has the burden of overcoming the presumption of correctness of the notice of deficiency. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933); Kale v. Commissioner, T.C. Memo. 1996-197. To meet that burden, petitioner must affirmatively demonstrate the invalidity of the S corporation election by JPS. Poulter v. Commissioner, T.C. Memo. 1967-220, affd. per curiam 397 F.2d 415 (4th Cir. 1968). Conversely, if JPS's S corporation status is a necessary component of an issue on which respondent bears the burden of proof, such as fraud,

respondent has the burden of demonstrating the <u>validity</u> of JPS's S corporation election.

<u>Deficiencies</u>

We turn to the deficiency determinations, on which petitioner bears the burden.  Petitioner challenges the validity of the S corporation election on three grounds:  (1) That the signatures on the Form 2553 were forgeries that were not authorized by petitioner or Mary Ann Johnson; (2) that when the Form 2553 was stamped "Received" by the Fresno Service Center on November 26, 1976, it was untimely; and (3) that when the Form 2553 was stamped "Received" on November 26, 1976, it was not complete enough to be a valid election, and when it was stamped "Received" a second time on January 12, 1977, in more complete form, it was untimely.

With respect to the signatures, respondent contends that petitioner is precluded from challenging the validity of the S corporation election based on irregularities in the Form 2553 that were not detectable by respondent.  Since nothing on the face of the Form 2553 as submitted indicated irregularities in the signatures, petitioner should be precluded from later challenging the validity of the election on the basis of the signatures, respondent argues, lest taxpayers be given license to "work both sides of the street" as suits their interests.  Fully articulated, respondent's theory is that both taxpayers and the

Government may challenge an S corporation election on the basis of defects that are apparent on the face of the Form 2553, but only the Government may challenge an election on the basis of defects that are not facially apparent.  Respondent's theory represents an effort to distinguish our opinion in Smith v. Commissioner, T.C. Memo. 1988-18, where we accepted a taxpayer's challenge to an S corporation election, although it was based on a facially apparent defect (absence of any signature of an officer authorized to elect for the corporation).  Also, in Levy v. Commissioner, 46 T.C. 531 (1966), we found an S corporation election invalid on the basis of a defect that was not facially apparent (Form 2553 signed by corporate officer where actual authority to sign resided with bankruptcy trustee), albeit at the behest of the Government.  However, we find nothing in Smith, Levy, or any of the other cases cited by respondent to suggest that the identity of the challenger, or the status of the Form 2553 defect as facially apparent or not apparent, was important to the result.  We accordingly reject respondent's contention and permit petitioner's challenge of the S corporation election in this case, whether or not based on facially apparent defects in the Form 2553.[4]

---

[4] It is worth noting, however, that in Smith v. Commissioner, T.C. Memo. 1988-18, where a taxpayer's challenge of an S corporation election was sustained, the question of whether the taxpayer should nonetheless be estopped from denying the S
(continued...)

Petitioner first argues that the signatures on the Form 2553 were forgeries, and that the Form 2553 was therefore invalid because there was no validly executed election of S corporation status by an authorized officer and no validly executed shareholder consents. As noted above, respondent concedes that the apparent signatures of petitioner were not affixed by him but makes no concession with respect to the apparent signature of Mary Ann Johnson. More importantly, respondent argues with respect to both signatures that they were authorized by petitioner and Mary Ann Johnson, and therefore that they were valid. An authorized signature is in certain circumstances treated as equivalent to an actual signature. Miller v. Commissioner, 237 F.2d 830 (5th Cir. 1956), affg. in part and revg. in part T.C. Memo. 1955-112; Booher v. Commissioner, 28 T.C. 817 (1957); Tompkins v. Commissioner, T.C. Memo. 1989-363; cf. Lefebvre v. Commissioner, 758 F.2d 1340 (9th Cir. 1985), affg. T.C. Memo. 1984-202; United States v. Ponder, 444 F.2d 816, 822 (5th Cir. 1971); secs. 1.6061-1, 1.6012-1(a)(5), Income Tax Regs.; sec. 1.6061-2T, Temporary Income Tax Regs., 58 Fed. Reg. 4080 (Jan. 13, 1993).

Respondent alleges that petitioner and Mary Ann Johnson authorized the signatures on the basis of the fact that JPS had a

[4](...continued)
corporation status of the corporation was expressly reserved for later disposition. Id. n.4.

small number of employees so that no one else had access to an actual signature to trace or simulate; the fact that the Form 2553, when returned to the JPS address for additional information, was promptly resubmitted with extensive details concerning JPS; and the fact that petitioner was in charge of financial operations. Petitioner puts considerable weight on his affidavit, in which he declares that he did not authorize anyone to sign his name. We need not accept a taxpayer's self-serving testimony as gospel. Tokarski v. Commissioner, 87 T.C. 74, 77 (1986); Three G Trading Corp. v. Commissioner, T.C. Memo. 1988-131 (declining to accept self-serving testimony in a summary judgment case). On the other hand, we may not merely rely on factual assertions in respondent's brief, which are not sufficient to defeat petitioner's motion. Smith v. Commissioner, T.C. Memo. 1983-706. In this case, however, the scenario that respondent suggests on brief is sufficiently plausible, given the facts in the record, for us to find that petitioner has not made a prima facie showing of the absence of a factual issue. The Form 2553 itself reflects preparation by someone with considerable information concerning JPS's affairs. Therefore, respondent need not come forth with affidavits or other documentary evidence to refute petitioner's position. Abramo v. Commissioner, 78 T.C. 154, 163-164 (1982); Rosberg v. Commissioner, T.C. Memo. 1988-267. We find that there is a

genuine issue of material fact as to whether the signatures were authorized by petitioner and Mary Ann Johnson. Accordingly, petitioner is not entitled to a summary ruling, based on invalid signatures, that JPS failed to make a valid S corporation election.

Petitioner next argues that the Form 2553 was untimely filed and that, as a result, JPS was not a valid S corporation during the years in issue. To decide whether an S corporation election was timely, we look to the law in effect at the time the election was purportedly made. See Smith v. Commissioner, T.C. Memo. 1988-18. The parties agree that under the Code and regulations in effect in 1976, the Form 2553 had to be filed on or before November 24, 1976, the day before Thanksgiving, in order to be timely.[5] Under the Code and regulations in effect in 1976, a new corporation, in order to elect S corporation status from its inception, had to make the election during the first month of the corporation's taxable year.[6] The first month of JPS's taxable

---

[5] Petitioner cursorily raises the argument that JPS began doing business as early as Oct. 4, 1976, and that the first month of JPS's first taxable year therefore ended Nov. 3, 1976, but provides no authority for this contention. However, elsewhere in his brief, petitioner concedes that the last day for filing the Form 2553 was Nov. 24, 1976. See infra note 7.

[6] Sec. 1372(c), as in effect for 1976, provides as follows:

An election under subsection (a) may be made by a small business corporation for any taxable year at any time during the first month of such taxable year, or at any
(continued...)

year was the period from October 25 through November 24, the day before Thanksgiving.[7]  Thus, the election had to be made on or before November 24, 1976, in order to be timely.[8]

As previously noted, a presumption of correctness attaches to respondent's notice of deficiency, necessarily including, in

_____

(...continued)
time during the month preceding such first month.  Such election shall be made in such manner as the Secretary shall prescribe by regulations.

Obviously, a corporation could not elect S corporation status in the month preceding its first month of existence.

[7] The regulations provide:

In the case of a new corporation whose taxable year begins after the first day of a particular month, the term "month" means the period commencing with the beginning of the first day of the taxable year and ending with the close of the day preceding the numerically corresponding day of the succeeding calendar month * * *.  [T]he first month of the taxable year of a new corporation does not begin until the corporation has shareholders or acquires assets or begins doing business, whichever is the first to occur.

Sec. 1.1372-2(b)(1), Income Tax Regs. (1976).  JPS was not incorporated until Oct. 25, 1976.  The regulation quoted above refers to the first month of the taxable year of the corporation, and there was no corporation in existence prior to Oct. 25.  Thus, the first month of JPS's taxable year could not have begun prior to Oct. 25.  At the same time, respondent does not dispute that JPS either had shareholders, had acquired assets, or began doing business as of Oct. 25.  Accordingly, for purposes of petitioner's motion we treat Oct. 25 as the beginning of the first month of JPS's first taxable year.

[8] There is no evidence or allegation of any other elections or Forms 2553 besides the one under discussion here.  In particular, there is no evidence that other Forms 2553 were filed during the first or last month of any of JPS's taxable years.

the case of a determination of the receipt of S corporation income, the timely filing of a valid S corporation election. With respect to timeliness, the parties have stipulated that the Form 2553 was stamped "Received" on November 26, 1976. This fact, coupled with the presumption of correctness of the notice of deficiency, entitles respondent to the presumption that the Form 2553 was timely by operation of section 7502, which deems a late delivered document to be filed on the date of the U.S. postmark in certain circumstances. Thus, in order to rebut this presumption, petitioner has the burden of proving that the Form 2553 was either postmarked untimely or not mailed at all; i.e., transported by private courier or hand delivered. Petitioner cannot show this, however, because the parties have stipulated that it is unknown whether the Form 2553 was mailed, transported by private courier, or hand delivered. Therefore, petitioner is not entitled to a summary ruling, based on the untimely filing of the Form 2553, that JPS failed to make a valid S corporation election.

Finally, petitioner argues that the Form 2553, as stamped "Received" on November 26, 1976, was so incomplete that it failed to constitute a valid S corporation election, and that the form as subsequently supplemented and resubmitted pursuant to the Fresno Service Center's request of January 7, 1977, was untimely. Respondent argues that the Form 2553 was sufficiently complete

when first received, for two reasons:  First, respondent argues that all that is required for a Form 2553 to be sufficiently complete is the signature of the authorized officer and the consent of the shareholders, citing Thompson v. Commissioner, 66 T.C. 737 (1976); Brutsche v. Commissioner, 65 T.C. 1034 (1976), revd. on other grounds and remanded 585 F.2d 436 (10th Cir. 1978); Garrett & Garrett, P.C. v. Commissioner, T.C. Memo. 1993-453; and Leve v. Commissioner, T.C. Memo. 1985-255.  Second, respondent argues that the second submission of the Form 2553 demonstrated the validity of the original submission, permitting the original submission to be treated as complete and valid. With respect to the first argument, respondent concededly has found no case in which the election form was incomplete in content in exactly the same respects as the one at issue in this case.  However, petitioner has not cited any case where a Form 2553 was found ineffective on the basis of something other than the absence of valid signatures of an authorizing corporate officer or consenting shareholders, or untimeliness of filing. In any event, we need not decide whether the signature of the authorized officer and the consent of the shareholders are sufficient in all cases; rather, as discussed below, we hold that in the circumstances of this case, petitioner is not entitled to a summary adjudication that the Form 2553 was too incomplete to be considered valid.

As respondent points out, it was not apparent on the face of the Form 2553 as first received whether it constituted a valid election. The original submission of the Form 2553 contained two signatures (the apparent signatures of petitioner and Mary Ann Johnson) purporting to be shareholder consents; nonetheless, the Fresno Service Center would have been unable to determine whether all of the shareholders had consented to the S corporation election, because the original submission did not list the names of the shareholders. Further, the Fresno Service Center would have been unable to determine whether the election was timely, because the original submission did not contain the date JPS first had shareholders, the date JPS first had assets, or the date JPS began doing business. See supra note 7. None of this information was "readily available to respondent by a cursory review of the rest of" the Form 2553, as in Leve v. Commissioner, supra. The Fresno Service Center solicited more information, respondent argues, in an effort to determine whether the original submission was valid. The second submission contained sufficient information from which the Fresno Service Center could determine whether or not all the shareholders had consented to the election on the original submission and whether or not the original submission was a timely election.[9] We conclude that, given the

---

[9] In Garrett & Garrett, P.C. v. Commissioner, T.C. Memo. 1993-453, the taxpayer twice submitted a Form 2553, with the
(continued...)

particular circumstances of this case, petitioner is not entitled to a summary ruling, based on the incompleteness of the Form 2553, that JPS failed to make a valid S corporation election.

Fraud

As noted earlier, insofar as JPS's S corporation status is a necessary component of an issue on which respondent bears the burden of proof, such as fraud, respondent would have the burden of demonstrating the validity of JPS's S corporation election. Respondent would be unable to carry this burden, because he would be unable to show that the Form 2553 was timely, given the stipulations: (1) That the Form 2553 was stamped "Received" on November 26, 1976 (2 days after the last day for filing the Form), and (2) that it is unknown whether the Form 2553 was mailed, transported by private courier, or hand delivered. (Thus, respondent would not be able to demonstrate timely filing on the basis of section 7502.) However, respondent need not rely on JPS's S corporation status to prove fraud in this case, because he has determined other underpayments not related to S corporation income from JPS, and proof that some part of any of these other underpayments was due to fraud would suffice to establish the fraud penalty with respect to the entire

---

[9](...continued)
second submission much more complete than the first, but in that case the first submission did not contain any signatures representing shareholder consents and was therefore invalid.

underpayment.  Therefore, it is potentially irrelevant whether respondent can prove fraud with respect to the JPS S corporation income and likewise irrelevant whether respondent can prove the S corporation election was valid.  As a result, we do not believe petitioner has demonstrated that he is entitled to summary adjudication of this issue.

Accordingly, for the reasons set out above, we will deny petitioner's motion.

To reflect the foregoing,

<u>An appropriate order will</u>

<u>be issued</u>.