T.C. Memo. 1996-155

UNITED STATES TAX COURT

CHARLES J. DUGAN, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1053-94.                    Filed March 27, 1996.

Charles J. Dugan, pro se.

George D. Curran, for respondent.

MEMORANDUM OPINION

DAWSON, Judge:  This case was assigned to Chief Special

Trial Judge Peter J. Panuthos pursuant to the provisions of

section 7443A(b)(4) and Rules 180, 181, and 183.[1]  The Court

_____

[1]  All section references are to the Internal Revenue Code
in effect for the year in issue, unless otherwise indicated.  All
Rule references are to the Tax Court Rules of Practice and
Procedure.

agrees with and adopts the opinion of the Chief Special Trial Judge, which is set forth below.

OPINION OF THE SPECIAL TRIAL JUDGE

PANUTHOS, Chief Special Trial Judge:  Respondent determined a deficiency in petitioner's 1991 Federal income tax in the amount of $8,241, an addition to tax pursuant to section 6651(a) in the amount of $894.25, and an addition to tax pursuant to section 6654 in the amount of $175.85.[2]  The issues for decision are:  (1) Whether petitioner timely filed his 1991 Federal income tax return;[3] (2) whether petitioner can elect married filing joint return status pursuant to section 6013; (3) whether

---

[2]  We granted respondent's motion for leave to amend her answer to conform the pleadings to the evidence presented. Respondent asserts additional Schedule C income in the amount of $5,547 and a capital gain of $4,217.  The increase results from items reflected on the purported copy of the 1991 return. Petitioner agrees to the additional Schedule C income; however, he claims offsetting expenses.  Petitioner agrees to the capital transaction but claims a loss rather than a gain.  The deficiency and additions to tax asserted in the amended answer are as follows:

|  | Additions to Tax | |
| Deficiency | Sec. 6651(a) | Sec. 6654 |
| $10,126 | $1,366 | $326 |

Respondent bears the burden of proof to the extent she seeks an increased deficiency and increased additions to tax.  Rule 142(a).

[3]  There is a dispute as to whether the 1991 return was filed and whether a purported copy of the return submitted by petitioner to the Internal Revenue Service at a later date constitutes the filing of a return.  Because of this dispute, any references to the 1991 return are not intended as a conclusion that the document constitutes a return or that it was filed.

petitioner is entitled to dependency exemptions for his two daughters; (4) whether petitioner may claim certain Schedule C expenses as deductions; (5) whether petitioner is entitled to a long-term capital loss deduction; and (6) whether the additions to tax for failure to file and failure to pay estimated income tax, pursuant to sections 6651 and 6654, respectively, should be sustained.

For simplicity and clarity, we will first set forth the relevant background facts. We shall then combine our findings of fact and opinion with respect to each issue.

Some of the facts have been stipulated, and they are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time of filing the petition herein, petitioner resided in Riverside, New Jersey.

During 1991, petitioner was a manager for Drink-A-Toast Co., a small soft drink manufacturing company. Petitioner received wages from Drink-A-Toast Co. totaling $39,773. As manager, petitioner was in charge of personnel, payroll, and the manufacturing process. Petitioner has prepared individual and business income tax returns since 1975.

Issue 1 and 2. Petitioner's Filing Status and the Filing of the 1991 Return

(a) General

The first two issues--(1) whether petitioner timely filed his 1991 return, and (2) whether petitioner may elect "married filing joint" status--are intertwined.

Petitioner's initial position is that he filed a return (claiming married filing separate return status) prior to the mailing of the notice of deficiency. Despite this assertion, petitioner argues that he is entitled to claim married filing joint return status.[4]

Respondent determined that petitioner did not file a return prior to the mailing of a notice of deficiency or the filing of the petition herein. Nevertheless, respondent argues that petitioner is not entitled to joint filing status since the copy of the tax return, submitted after the mailing of the notice of deficiency and after the filing of the petition, claimed married filing separate return status. Respondent argues that section 6013(b)(2)(C) applies to prohibit the joint return election.

Since our analysis of petitioner's entitlement to joint filing status is affected by a finding with respect to the filing of the 1991 tax return, we first consider the question of when the 1991 return was filed.[5]

(b) Respondent's Records

On April 15, 1992, petitioner filed an application for extension of time for filing his 1991 Federal income tax return with the Internal Revenue Service (IRS) and enclosed a payment of

---

[4] We note that petitioner's position in this regard is contrary to the clear language of sec. 6013(b)(2)(C).

[5] We further note that the timing of the filing of the 1991 return is also relevant to issue (6), the addition to tax under sec. 6651.

$1,000. An IRS computer-generated report dated June 9, 1995, indicates that a substitute return was prepared for the tax year ended 1991 on June 24, 1993. The substitute return reported petitioner's adjusted gross income as $39,453 and his taxable income as $23,741. A notice of deficiency dated October 19, 1993, was subsequently mailed to petitioner. IRS records reflect that no return was filed by petitioner for 1991 prior to the issuance of the statutory notice of deficiency. Petitioner timely filed his petition in this Court on January 18, 1994.

On April 15, 1994, respondent's Appeals Office received a purported copy of petitioner's 1991 return. The return reflects adjusted gross income of $39,453 and taxable income of $23,741. The return bears an original signature and date of April 12, 1993, next to the signature line. The return claimed married filing separate return status. On March 30, 1995, the IRS District Director in Camden, New Jersey, received petitioner's amended 1991 return. The amended return claimed married filing joint return status. The parties now agree that petitioner and his wife, Diane Dugan, intended this document to be a joint return for 1991.

(c) Presumption of Correctness

Petitioner argues that he timely filed his 1991 return and that respondent's determination that he failed to file should not be accorded the normal presumption of correctness. Petitioner suggests that, as a result of a past history of the IRS' making

mistakes in processing his tax return information, respondent should bear the burden of proof with respect to the question of whether petitioner timely filed his 1991 return.

It is well established that in the absence of exceptional circumstances the Court will not look behind a deficiency notice to determine whether the Commissioner's agents followed proper administrative procedures. Human Engineering Institute v. Commissioner, 61 T.C. 61, 66 (1973); see also Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 327 (1974). Even in such exceptional circumstances, the Court will generally not hold the deficiency notice null and void to relieve the taxpayer of any tax liability. Greenberg's Express, Inc. v. Commissioner, supra at 328.

The evidence presented does not indicate that respondent's agents engaged in any conduct violative of petitioner's rights, nor does it show that the deficiency notice was arbitrary or without foundation. Accordingly, respondent's determination is presumed correct.

(d) Filing of the 1991 Return

Having concluded that petitioner has the burden of proof to establish the timely filing of his 1991 return, we must consider whether he has met that burden. Petitioner alleges that he filed his 1991 return on or about April 15, 1992.[6] The only evidence

---

[6] At trial, petitioner testified that he filed his 1991 return on Apr. 15, 1992. It was not clear whether petitioner
(continued...)

produced by petitioner is a purported "copy" of his 1991 return bearing an original signature and date of April 12, 1993.

We note that the information reflected on the purported copy of petitioner's income tax return submitted to respondent's Appeals Office on April 15, 1994, corresponds to the information reflected on the substitute return prepared by the IRS. Petitioner suggests that this 1991 return was timely filed and that the IRS used information from the 1991 return in preparing the substitute return in June 1993. However, we are not convinced that the information reflected in the substitute return supports petitioner's argument that he filed a 1991 return prior to the issuance of the notice of deficiency. The June 9, 1995, IRS computer record reflecting the substitute return was not generated when the substitute return was prepared, but rather it was created in anticipation of trial. Therefore, the similarities between the amounts reflected in the substitute return prepared by respondent and the amounts reflected in the purported copy of petitioner's return do not lead us to conclude that the 1991 return was filed in 1992 or 1993. It appears probable that petitioner prepared the purported copy of the 1991

---

[6](...continued)
misspoke with respect to this assertion. Given that he filed a request for an extension on Apr. 15, 1992, and the purported copy of his 1991 return reflects a signature and date of Apr. 12, 1993, it seems unlikely that petitioner intended to testify that he filed the return in 1992. Based upon our discussion, infra, this apparent misstatement is not determinative but does reflect a certain amount of confusion and inconsistency by petitioner.

return using the information reflected in the substitute return. There is nothing in the IRS records which would lead us to believe that a 1991 return was filed prior to the mailing of the notice of deficiency.

As a general rule, we are not required to accept petitioner's self-serving testimony as to when he filed his return. Masters v. Commissioner, 243 F.2d 335, 338 (3d Cir. 1957), affg. 25 T.C. 1093 (1956); Tokarski v. Commissioner, 87 T.C. 74 (1986). Petitioner has not met his burden of proving that he timely filed his 1991 return. Therefore, we conclude that petitioner did not file a return prior to the issuance of the notice of deficiency and the filing of the petition.

(e) Election of Married Filing Joint Return Status

Having found that no return was filed and that the purported copy of the 1991 return was not submitted until after the mailing of the notice of deficiency and after the filing of the petition herein, we must decide whether petitioner may elect married filing joint return status. On the purported copy, submitted April 15, 1994, petitioner designated his filing status as "married filing separate". On March 30, 1995, the IRS received an amended return for 1991 on which petitioner elected the filing status of "married filing joint".[7]

---

[7] The purported copy of the 1991 return submitted Apr. 15, 1994, includes substantially identical income to that determined in the notice of deficiency. The return submitted by petitioner

(continued...)

At the outset, we note that once a taxpayer chooses to litigate a claim in the Tax Court, we have exclusive jurisdiction over the issues involved in adjudicating the tax liability. Naftel v. Commissioner, 85 T.C. 527, 533 (1985). As we stated in Naftel v. Commissioner, supra at 533: "We acquire jurisdiction when a taxpayer files with the Court and that jurisdiction extends to the entire subject matter of the correct tax for the taxable year."

At the time the notice of deficiency was mailed, and at the time of filing the petition, a 1991 return had not been filed by petitioner. The question, then, is what effect the submission of a purported copy of the 1991 return and amended return, after the filing of the petition, had upon petitioner's ability to elect joint return status. The parties submitted the purported copy of the return and amended return into the record. Evidence and argument were presented as to the correctness of petitioner's position as reflected in the purported copy of the 1991 return and the amended return. Respondent does not argue that the matters raised by the submission of the April 15, 1994, return or the March 30, 1995, amended return are not in issue in this case.

---

[7](...continued)
claims additional dependency exemptions, itemized deductions, Schedule C expenses, and a capital loss. The return reflects no tax due. The amended return submitted Mar. 30, 1995, seeks married filing joint return status. In a supplemental stipulation of facts filed with the Court, the parties agree that petitioner and his wife intended the return submitted Mar. 30, 1995, as a joint return.

Rather, respondent argues that petitioner is not entitled to claim joint filing status pursuant to section 6013(b)(2)(C).

Section 6013(b)(2) permits the election of a joint return, after a separate return has been filed, under specified circumstances. Section 6013(b)(2)(C) precludes the filing of a joint return where a separate return has been filed, a notice of deficiency has been mailed to either spouse, and a petition has been timely filed with the Court.[8] Millsap v. Commissioner, 91 T.C. 926, 929 (1988); Jacobson v. Commissioner, 73 T.C. 610, 614 (1979).

On brief respondent argues that section 6013(b)(2)(C) applies since the election to file a joint return was made after a notice of deficiency was mailed to petitioner and after a petition was filed with this Court. Respondent's argument misses the mark. In submitting a purported copy of the 1991 return to respondent's Appeals Office on April 15, 1994, it is not clear that petitioner intended to "file" the 1991 return on that date.

---

[8]    SEC. 6013(b)(2). Limitations for making of election.--The election provided for in paragraph (1) may not be made--

   * * *

      (C)  after there has been mailed to either spouse, with respect to such taxable year, a notice of deficiency under section 6212, if the spouse, as to such notice, files a petition with the Tax Court within the time prescribed in section 6213; * * *

Rather it appears that petitioner attempted to provide support for his position that he had previously filed his 1991 return. The purported copy was submitted to respondent's Appeals Office as evidence of a filing. There is no question that the document submitted to the IRS by petitioner purports to be a copy of a previously filed return. Respondent's argument that the submission of the purported copy of a return to the IRS Appeals Office (after the petition was filed) constitutes the filing of a return (which, she claims, would invoke section 6013(b)(2)(C)) is unpersuasive.

At the time the notice of deficiency was mailed and the petition was filed, no return had been filed by petitioner. Thus, at that time, petitioner was in the same position as the taxpayers in Millsap v. Commissioner, supra at 938, and the taxpayer in Phillips v. Commissioner, 86 T.C. 433, 437 (1986), affd. on this issue 851 F.2d 1492 (D.C. Cir. 1988). In those cases, we held that the taxpayers could elect joint return status after a proceeding was commenced in this Court. We reasoned in Millsap v. Commissioner, supra at 937, as follows:

> To treat the issue of a taxpayer's filing status any differently than the issues involving deductions or income items would be arbitrary and without reason. A taxpayer is no less entitled to question respondent's determination of filing status than he is any other determination. * * *

> we hold that in situations where deficiency procedures are availed of and a taxpayer has not filed a return, the taxpayer may file a return and contest respondent's filing status determination, even though respondent has

> "filed" a substitute return under section 6020(b), in which filing status has been "elected" by respondent. To hold otherwise would be to cede jurisdiction as to the determination of filing status in all cases where no return has been filed to respondent for his absolute and final determination. * * *

Based on the foregoing analysis, we conclude that petitioner is not prohibited from claiming joint return status. Since the parties agree that petitioner and his wife, Diane Dugan, intended to file a joint return for the taxable year 1991 by the submission of the amended return on March 30, 1995, petitioner and his wife are entitled to joint filing status.

Issue 3. Dependency Exemptions

The question presented is whether petitioner is entitled to dependency exemption deductions for his two daughters on the 1991 amended joint return. Respondent disallowed the exemptions on the basis that petitioner had not demonstrated that his two daughters resided with him and that he supported them. Petitioner contends that he is entitled to the claimed deduction because he provided all financial support for the children.

Deductions are strictly a matter of legislative grace, and petitioner bears the burden of proving that he is entitled to any deduction claimed. Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435 (1934). This includes the burden of substantiation. Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976).

A dependency exemption may be allowed as a deduction only if the requirements of sections 151 and 152 are satisfied. If the child is under the age of 19, and is a "dependent" within the meaning of section 152, the exemption will be allowed. Sec. 151(c)(1)(B). "Dependent" includes, among other family members, a daughter "over half whose support, for the calendar year in which the taxable year of the taxpayer begins, was received from the taxpayer". Sec. 152(a). Support is determined by taking into account--

> the amount of support received from the taxpayer as compared to the entire amount of support which the individual received from all sources, including support which the individual himself supplied. The term "support" includes food, shelter, clothing, medical and dental care, education, and the like. * * * [Sec. 1.152-1(a)(2)(i), Income Tax Regs.]

Petitioner lived with his wife and two children during the 1991 tax year. During 1991, petitioner's two daughters were under the age of 19. Petitioner's taxable income for 1991 was approximately $40,000, and his wife's income was approximately $2,200. We find that petitioner provided over half the support for the two children. From the foregoing, we conclude that petitioner is entitled to the dependency exemptions for the two children claimed on the amended 1991 jointly filed Federal income tax return.

Issue 4. Schedule C Expenses

In addition to his employment at Drink-A-Toast Co., during 1991, petitioner operated Smoluk, Dugan & Gaines, Inc. (SDG), an

accounting/computer consulting business.  On Schedule C of his 1991 return, petitioner reported income totaling $7,195 and expenses totaling $5,560.  The expenses listed on petitioner's Schedule C are as follows:

| | |
|---|---:|
| Car and truck expenses | $1,950 |
| Depreciation and section 179 expenses[1] | 1,945 |
| Other | 425 |
| Supplies | 945 |
| Subscriptions | 295 |
| Total expenses | $5,560 |

[1]  The sec. 179 expenses petitioner reported were computer expenses.

The parties stipulated that petitioner received $7,195 in gross receipts from his Schedule C business.  The stipulation also reflects that petitioner submitted the following receipts as substantiation for the claimed Schedule C expenses:

Automotive expenses:
| | |
|---|---:|
| Gary's Automotive | $848.88 |

Computer expenses:
| | |
|---|---:|
| Sam's Club | 1,368.85 |
| Software Gallery | 234.32 |

Other:
| | |
|---|---:|
| Clerk of Superior Court | 80.00 |
| Total expenses | $2,532.05 |

Respondent disallowed the claimed expenses on the basis that petitioner failed to establish that they were ordinary and necessary business expenses, and, further, that some of the claimed expenses were not substantiated (including satisfying the provisions of section 274(d)).  Petitioner argues that he is

entitled to deduct all of his claimed expenses. Respondent asserts that we should not estimate petitioner's expenses because petitioner has not demonstrated that the expenses were incurred for a business purpose. Respondent argues that petitioner is not entitled to all claimed Schedule C expenses because he has not properly substantiated such expenses in accordance with sections 162, 179, 274(d), and 280F(d).

Section 162(a) provides "There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." The regulations promulgated under section 162 provide that only those expenses "directly connected with or pertaining to the taxpayer's trade or business" may be deducted. Sec. 1.162-1(a), Income Tax Regs.

Whether an expenditure is ordinary and necessary is generally a question of fact. To be "necessary" an expense need be "appropriate and helpful" to the taxpayer's business. Welch v. Helvering, 290 U.S. 111, 113 (1933). For an expense to be "ordinary", "the transaction which gives rise to it must be of common or frequent occurrence in the type of business involved". Deputy v. duPont, 308 U.S. 488, 495 (1940) (citing Welch v. Helvering, supra at 114). The taxpayer bears the burden of proving that the claimed expense is deductible. Welch v. Helvering, supra at 115.

As a general rule, if the trial record provides sufficient evidence that the taxpayer has incurred a deductible expense, but the taxpayer is unable to adequately substantiate the amount of the deduction to which he or she is entitled, the Court may estimate the amount of such expense and allow the deduction to that extent. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). With respect to travel and entertainment expenses and listed property (as defined in section 280F(d)(4)), section 274(d) overrides this so-called Cohan doctrine, and requires substantiation "by adequate records or by sufficient evidence corroborating the taxpayer's own statements". Sec. 274(d). The taxpayer must substantiate: (1) The amount of the claimed expense; (2) the time and place the expense was incurred; and (3) the business purpose of the expense. Sec. 274(d).

Petitioner claimed a computer expense in the amount of $1,945 as a deduction pursuant to section 179. Petitioner submitted receipts from Sam's Club and the Software Gallery to substantiate part of the claimed expense. Computers and other peripheral equipment are "listed property" and must meet the strict substantiation requirements imposed by section 274(d). Sec. 280F(d)(4)(A)(iv). Given that petitioner has failed to demonstrate the business purpose for the computer expense in accordance with section 274(d), the deduction is disallowed.

On Schedule C of his 1991 return, petitioner claimed an automotive expense in the amount of $1,950. It is not clear

whether the automotive expense petitioner claimed was incurred solely in the operation of his business activity; i.e., as a travel expense subject to the substantiation requirements of section 274(d). The extent of petitioner's personal use of the automobile is also unclear. Given that petitioner has failed to identify the purpose for which the claimed expense was incurred, the deduction is not allowed.

Petitioner's check to the Clerk of the Superior Court is inadequate to justify his entitlement to the claimed expenditure. We cannot determine whether this fee is associated with a claim which is personal to petitioner, or whether it is business related. United States v. Gilmore, 372 U.S. 39 (1963); O'Malley v. Commissioner, 91 T.C. 352, 361 (1988). Petitioner has not demonstrated that the expense is an ordinary and necessary business expense under section 162. Accordingly, we will not allow petitioner to deduct the $80 payment to the Clerk of the Superior Court as a Schedule C expense.

Petitioner claimed deductions for supplies, subscriptions, and other expenses totaling $1,665. These expenditures do not fall within the purview of "listed property" and, therefore, are not subject to the substantiation requirements of section 274(d). However, petitioner has not provided the Court with any basis for allowing these expenditures as ordinary and necessary business expenses pursuant to section 162. In order for the Court to estimate the amount of an expense, we must have some basis upon

which an estimate may be made.  <u>Vanicek v. Commissioner</u>, 85 T.C. 731, 743 (1985).  Without such a basis, any allowance would amount to unguided largesse.  <u>Williams v. United States</u>, 245 F.2d 559, 560 (5th Cir. 1957).  Since petitioner has not demonstrated a business purpose for these expenses, the claimed expenses are disallowed.

<u>Issue 5.  The Capital Loss Deduction</u>

SDG was incorporated on June 1, 1981.  On the date of its incorporation, 33 shares of stock were issued to petitioner at a cost of $1 per share.  On November 30, 1981, petitioner transferred his automobile, valued at $2,600, to the corporation in exchange for 10 additional shares of stock.

Shortly after its incorporation, petitioner realized that SDG needed additional short-term capital for its operating expenses.  Petitioner approached an acquaintance, William J. Vaughn (Mr. Vaughn), with the prospect of investing in SDG.  Mr. Vaughn expressed some concern regarding the safety of his investment.  Accordingly, petitioner orally agreed to guarantee Mr. Vaughn's investment against a loss upon the liquidation of SDG.  The agreement was never reduced to writing, nor did the parties discuss the method or schedule of payments under the guaranty.  In the fall of 1981, Mr. Vaughn invested $15,000 in SDG in exchange for 60 shares of stock.

When SDG was liquidated in November 1983, the outstanding loan balance due to petitioner from SDG totaled $8,650.  At the

time of liquidation, SDG's assets consisted of office furniture, a client list, the car, and goodwill. Upon liquidation, petitioner received the client list, the automobile (valued at $1,000), and some office furniture (valued at $1,000). The record does not reflect what, if anything, Mr. Vaughn received upon liquidation.

Subsequent to the liquidation of SDG, petitioner made several payments to Mr. Vaughn in accordance with the guaranty. Petitioner's records reflect that he paid Mr. Vaughn $1,858.18 during 1991. In 1991, petitioner sold the client list for $13,500.

On the purported copy of petitioner's original return, petitioner claimed a capital loss of $1,500 from the sale of SDG's client list. Petitioner arrived at this amount by subtracting his asserted basis in the client list, $15,000, from the amount he received upon its sale, $13,500. Petitioner calculated his basis in the client list as equal to the amount of money he contributed to SDG in exchange for SDG stock, plus SDG's outstanding loan balance to petitioner, less the amount he received upon liquidation.

At trial, petitioner argued that his basis in the client list was $24,283, or $9,283 plus the $15,000 oral guaranty. Petitioner contends that he recognized a loss of $10,783 when he sold the client list for $13,500 in 1991.

Respondent asserts that petitioner's basis in the client list was $9,283 and, thus, petitioner recognized a capital gain of $4,217 upon its sale. Respondent does not include petitioner's oral guaranty as part of petitioner's basis.

At the time the notice of deficiency was issued, petitioner had not filed a Federal income tax return for the taxable year 1991. The substitute return did not reflect, and the notice of deficiency did not make an adjustment with respect to, the sale of the client list. To the extent that petitioner claims a loss from this transaction, the burden of proof is on petitioner. Rule 142(a); Welch v. Helvering, 290 U.S. at 115. On the other hand, to the extent that respondent asserts that the transaction resulted in a gain, and asserts an increased deficiency, respondent bears the burden of proof. Rule 142(a); Estate of Cordeiro v. Commissioner, 51 T.C. 195, 203 (1968).

The parties agree that the client list was sold in 1991 for $13,500. The parties, however, are not in agreement with respect to the basis of the client list. Accordingly, we must decide whether either party has established petitioner's basis in the client list.

Under section 331, amounts distributed in complete liquidation of a corporation shall be treated as full payment in

exchange for the stock.  Sec. 331(a).[9]  The exchange generally is treated as a disposition.  Secs. 331(c), 1001.

> Under section 334(a), the basis of property received in a complete liquidation in which gain or loss is recognized by the shareholder is the fair market value of such property on the date of distribution (i.e., the basis is considered stepped up to fair market value).  Sec. 334(a).  [Shelton v. Commissioner, 105 T.C. 114, 120 (1995).]

In other words, the basis of property received by a shareholder in a taxable corporate liquidation is equal to its fair market value on the date it is distributed.

Petitioner's theory as to the computation of his basis in the client list is erroneous.  Petitioner has failed to present evidence of the fair market value of the client list on the date of distribution to him.  Having failed to establish the basis, petitioner is not entitled to the claimed loss.

As indicated, respondent bears the burden of proving that petitioner incurred a capital gain upon the sale of the client list.  Respondent has failed to present any evidence as to the fair market value of the client list as of November 1983.  Since the record does not reflect the fair market value of the client list on the date it was distributed to petitioner, respondent has failed to carry her burden of proving that petitioner incurred a capital gain upon the sale of the client list.

Issue 6.  Section 6651(a) Addition to Tax

---

[9]  Sec. 331(b) provides that sec. 301 (relating to effects on shareholder of distributions of property) shall not apply to any distribution in complete liquidation.

The question presented is whether petitioner should be liable for an addition to tax for failure to file a tax return pursuant to section 6651. Respondent asserts that petitioner is liable for the addition to tax as petitioner has not presented any evidence that his 1991 return was timely filed. Additionally, respondent argues that petitioner has not demonstrated reasonable cause for the untimely filing.

Section 6651(a) imposes an addition to tax in the amount of 5 percent per month, not to exceed 25 percent, of the amount of such tax for failing to file a return within the time prescribed by statute, including extensions. The addition to tax will not be imposed where it is shown that the failure to file was due to reasonable cause and not to willful neglect. Baldwin v. Commissioner, 84 T.C. 859, 870 (1985).

We have found that petitioner did not timely file his 1991 return. Sec. 6072(a). Based upon our review of the record, we are satisfied that petitioner's failure to file was not due to reasonable cause. Sec. 6651(a)(1). We hold that petitioner is liable for the addition to tax pursuant to section 6651(a) for the taxable year 1991.

Issue 7.  Section 6654(a) Addition to Tax

Respondent determined that petitioner is liable for an addition to tax pursuant to section 6654(a) for failure to pay estimated income tax. This Court has noted that section 6654(a) contains "no provision relating to reasonable cause and lack of

willful neglect."  <u>Estate of Ruben v. Commissioner</u>, 33 T.C. 1071, 1072 (1960); see also <u>United States v. Steck</u>, 295 F.2d 682, 685 (10th Cir. 1961); <u>Judge v. Commissioner</u>, 88 T.C. 1175, 1188 (1987).  Petitioner has failed to show error in respondent's determination.  Accordingly, petitioner is liable for the addition to tax pursuant to section 6654(a).

<u>Decision will be entered</u>

<u>under Rule 155</u>.